## UNITED STATES v. YAMASAKA.

(Circuit Court of Appeals, Ninth Circuit.   February 5, 1900.)

No. 555.

ALIENS—DEPORTATION OF PAUPER IMMIGRANTS—AUTHORITY OF SECRETARY OF
	THE TREASURY.
		Under section 11 of Act March 3, 1891 (26 Stat. c. 551), amendatory of
	"the various acts relative to immigration and the importation of aliens
	under contract or agreement to perform labor," which provides that any
	alien who shall come into the United States in violation of law may be
	returned, "as by law provided," at any time within one year thereafter,
	and that any alien who becomes a public charge within one year after his
	arrival, from causes existing prior to his landing, "shall be deemed to
	have come in violation of law and shall be returned as aforesaid," the
	secretary of the treasury has authority to cause the arrest and deporta-
	tion of such an immigrant; the phrase, "as by law provided," having refer-
	ence to the provision of Act Oct. 19, 1888 (25 Stat. 566), which is the only
	law prescribing a method of procedure for the deportation of aliens after
	they have been permitted to land.   The fact that the decision of the secre-
	tary in such matter is not made conclusive, as in case of decisions denying
	the right to land, does not affect its validity or force, so long as it remains
	unreversed.

Appeal from the District Court of the United States for the
Northern Division of the District of Washington.

Wilson R. Gay and Charles E. Claypool, for the United States.
Corwin S. Shank and Winfield R. Smith, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge.   Upon the petition of T. Yamasaka, a
Japanese, alleging that he was unlawfully detained and restrained
of his liberty by Samuel C. Walker, an immigration inspector, act-
ing under the authority of the secretary of the treasury, a writ of
habeas corpus was issued from the district court of the United
States for the Northern district of Washington, to which writ the
said Samuel C. Walker made answer, setting forth, in substance,
that the petitioner, the appellee, is a Japanese, who about December
15, 1898, unlawfully and surreptitiously entered the United States
without the permission of the immigration officers, and that in
June, 1899, the said Samuel C. Walker, immigration inspector, found
said petitioner within the territory of the United States, and in the
district of Washington, and proceeded, in the ordinary and usual
manner, to investigate his right there to be, and discovered, upon
such investigation, that the said petitioner was a pauper, and was a
person likely to become a public charge, and that he belonged to one
of the prohibited classes of aliens, under the immigration laws of
the United States; that, in pursuance of the regulations of the sec-
retary of the treasury, the said inspector, by virtue of his office, ar-
rested the petitioner, and held him in custody pending the report
of his action and finding to the secretary of the treasury, for his
action thereon; that he also reported said arrest to the bureau of
immigration, and that the bureau also, upon the evidence produced,

found the said petitioner to be unlawfully within the United States, and a proper person for deportation, which finding was also reported to the secretary of the treasury, whereupon the latter made an examination and decision resulting in the issuance of his warrant of deportation; that the said petitioner offered no evidence upon the facts alleged in said answer, and prosecuted no appeal from said decisions. The petitioner's counsel moved to quash the return of the writ and for the discharge of the prisoner. The district court thereupon ordered the inspector to discharge the prisoner, for the reason that no sufficient cause existed why he should be held. The appeal is taken from the action of the district court in so discharging the petitioner from custody. 95 Fed. 652.

The question presented on the appeal is whether an alien who succeeds in surreptitiously landing in the United States may, within a year from the date of such landing, be arrested and deported by the secretary of the treasury without a judicial proceeding before a court. The first statute providing for the return by the secretary of the treasury of prohibited aliens from a port in this country to the country whence they came is the act of February 23, 1887 (1 Supp. Rev. St. [2d Ed.] p. 541). It is there enacted that aliens arriving at the ports of the United States under contract to perform labor in the United States shall not be permitted to land, and that all persons included in the prohibition shall upon arrival be sent back to the nations to which they belong and from whence they came, and that the secretary of the treasury shall prescribe regulations for the return of such persons to the countries whence they came, and that the expense of such return shall be borne by the owners of the vessels in which such persons came. On October 19, 1888, said act was amended (1 Supp. Rev. St. [2d Ed.] p. 633). The amendment authorizes the secretary of the treasury, in case he shall be satisfied an immigrant has been allowed to land contrary to the prohibition of the statute, to cause such immigrant, within the period of one year after landing or entry, to be taken into custody, and returned to the country from whence he came, at the expense of the owner of the importing vessel. On March 3, 1891, the prior acts were further amended. 26 Stat. 1084. By this amendment the office of superintendent of immigration was created, and, among other provisions, the following sections were enacted. A portion of section 8 is as follows:

"The inspection officers and their assistants shall have power to administer oaths, and to take and consider testimony touching the right of any such aliens to enter the United States, all of which shall be entered of record. During such inspection after temporary removal the superintendent shall cause such aliens to be properly housed, fed, and cared for, and also, in his discretion, such as are delayed in proceeding to their destination after inspection. All decisions made by the inspection officers or their assistants touching the right of any alien to land, when adverse to such right, shall be final unless appeal be taken to the superintendent of immigration, whose action shall be subject to review by the secretary of the treasury."

Section 10 provides that:

"All aliens who may unlawfully come to the United States shall, if practicable, be immediately sent back on the vessel by which they were brought in."

Section 11:

"That any alien who shall come into the United States in violation of law may be returned as by law provided, at any time within one year thereafter, at the expense of the person or persons, vessel, transportation company, or corporation bringing such alien into the United States, and if that cannot be done, then at the expense of the United States; and any alien who becomes a public charge within one year after his arrival in the United States from causes existing prior to his landing therein shall be deemed to have come in violation of law and shall be returned as aforesaid."

Section 13:

"That the circuit and district courts of the United States are hereby invested with full and concurrent jurisdiction of all causes, civil and criminal, arising under any of the provisions of this act; and this act shall go into effect on the first day of April, eighteen hundred and ninety-one."

No question can be made of the power of the United States to deal summarily with aliens who have succeeded in landing in the United States in violation of law, as well as with those who are applying for admission. Said the court in Fong Yue Ting v. U. S., 149 U. S. 713, 13 Sup. Ct. 1022, 37 L. Ed. 905: "The power to exclude aliens, and the power to expel them, rest upon one foundation, are derived from one source, are supported by the same reasons, and are in truth but parts of one and the same power." The question before the court, therefore, is one purely of the construction of the provisions of the acts above mentioned. What is meant by the provision of section 11 of the act of March 3, 1891, that any alien who shall come into the United States in violation of law may be returned "as by law provided"? In enacting that provision congress obviously had in mind its previous statutory regulation for returning to the country whence they came aliens who, coming under a contract to perform labor, had been unlawfully permitted to land in the United States. Turning to the law of October 19, 1888, above referred to, it will be seen that by its provisions the secretary of the treasury is authorized, in case he shall be satisfied that an immigrant has been allowed to land contrary to the prohibition of that law, to cause such immigrant, within the period of one year after landing or entering, to be taken into custody, and returned to the country whence he came, at the expense of the owner of the importing vessel. We find no other statutory provision to which the language of section 11, "as by law provided," is referable. By using those words, congress clearly declared that there was to be found in its statutory enactments a manner provided by law to meet the requirements of the statute. The act of March 3, 1891, is declared to be amendatory of the "various acts relative to immigration and the importation of aliens under contract or agreement to perform labor." Among such acts was the act of October 19, 1888. The amendment adds to the class of persons who may be deported by the former act, and includes therein idiots, insane persons, paupers, or persons likely to become a public charge, and other classes of persons, but it makes no change in the method which was prescribed for dealing with such cases of unlawful entry. The procedure remains as before—First, the secretary of the treasury shall be satisfied that an immigrant has landed in violation of the

prohibition; and, second, he shall cause him, within one year after landing, to be taken into custody, and returned to the country whence he came. This is the "manner provided by law." Nothing more is required in the way of procedure. There must be imported, therefore, into the language of section 11 the previous enactment of October 19, 1888. When so read, it is clear that section 11 confers upon the secretary of the treasury the authority to act by and through the immigration officers who are under his control, and to arrest and return to the country whence he came, within one year after landing, any alien who has or who is deemed by law to have landed in the United States in violation of that statute. It is urged against this construction that section 8 of the law of 1891 makes final only the adverse decisions of the inspection officers or their assistants touching "the right of an alien to land." To this it may be said that the omission of the statute to make final the decision of the secretary of the treasury, directing that one who has landed in the United States in violation of the law be returned to the country whence he came, does not render such decision and order invalid. If the order is not by statute made final, it is nevertheless valid and conclusive until overruled by paramount authority. What was in fact the effect of the decision of the secretary of the treasury in this case, whether final or not, we are not called upon to determine. Conceding that it was not final, and that the district court had jurisdiction, upon writ of habeas corpus, to investigate the facts, and to render a judgment thereupon, it is nevertheless true that no such judicial proceeding was had. The ruling of the district court in discharging the petitioner was based upon the assumption that the action of the secretary of the treasury was without authority of law and void. To this view, for the reasons above stated, we cannot assent. That the immigration inspector in deporting the petitioner was acting under instructions from the secretary of the treasury, and under the provisions of the statute and the printed rules which were issued from the treasury department, is clearly shown by the return to the writ, and by the warrant for deportation, which bears the signature of the secretary of the treasury, and is attested by his official seal.

It is contended that warrant for the ruling of the district court is found in section 13 of the act of 1891, which confers concurrent jurisdiction upon the circuit and district courts of all causes, civil and criminal, arising under the act. In the case of Nishimura Ekiu v. U. S., 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146, the supreme court, in considering that provision of the statute, said that section 13 "evidently refers to causes of judicial cognizance, already provided for, whether civil actions in the nature of debt for penalties, under sections 3 and 4, or indictments for misdemeanors, under sections 6, 8, and 10. Its intention was to vest concurrent jurisdiction of such causes in the circuit and district courts, and it is impossible to construe it as giving the courts jurisdiction to determine matters which the act has expressly committed to the final determination of executive officers." While it may not be claimed for this utterance of the court that it was intended thereby to itemize

all the classes of jurisdiction that might be exercised by the circuit and district courts under section 13, it may be adverted to as showing what, in the opinion of the court, was the obvious line of distinction between the powers conferred upon the courts and those conferred upon executive officers. Whether or not the district court, under the provisions of that section, would have had jurisdiction of a proceeding to deport the petitioner, is a question which is not involved in the present case. What we hold is that the action of the secretary of the treasury was, upon the facts stated in the return to the writ, authorized by law, and that the judgment of the district court, discharging the petitioner from custody upon the ground that he was unlawfully restrained of his liberty, was error, for which the judgment must be reversed, and the cause remanded for further proceedings not inconsistent with the foregoing views.