**In re LEA et al.**

**(District Court, D. Oregon. October 26, 1903.)**

1. ALIENS—DEPORTATION—EXCLUSIVENESS OF EXECUTIVE AUTHORITY.

By section 21, Act March 3, 1903 (32 Stat. 1218, c. 1012 [U. S. Comp. St. Supp. 1903, p. 180]), authority is conferred on the Secretary of the Treasury, when satisfied that an alien has been found in the United States in violation of said act, to cause such alien to be arrested and returned to the country whence he came at any time within three years after landing in this country; and an alien who is subject to such deportation, and who has been taken into custody for that purpose, cannot be discharged by a court on a writ of habeas corpus, notwithstanding any illegality in the proceedings.

Habeas Corpus. On demurrers to returns to writ.

James Gleason, for petitioners.

John H. Hall, U. S. Atty.

BELLINGER, District Judge. The petitioners allege that on about the 20th of September, 1903, a man named Lavin, and another whose name is to them unknown, forcibly took the petitioners by a pretended arrest, and conveyed them to the Home of the Good Shepherd, and placed them in charge of the superioress of that institution, where they have since remained; that ever since such imprisonment the petitioners have not been permitted to see any of their friends nor to communicate with any person; that the persons making such arrest exacted a promise from said superioress that upon no condition were the petitioners to be allowed to see or communicate with any person, and that petitioners' attorney has, in consequence of such pledge, not been permitted to see or communicate with them. The return made to this petition is by Wm. B. Estelle, United States immigrant inspector. It does not deny the averments contained in the petition. In justification of the arrest and imprisonment complained of, it is alleged that about the 17th day of November, 1902, Victoria Gautier landed at the city of New York, and about August 1, 1903, Louise Lea landed at the same port, as immigrants from the Republic of France; that they were at the time prostitutes, and came to the United States for the purpose of plying their vocation as such; that they came to Portland, where they were, at the time of their arrest, living in houses of prostitution; that they were interrogated by the inspectors charged with the duty of investigating such cases, and testified that they were prostitutes; that they declined to give the names of any witnesses in their behalf; that the testimony of the women who were conducting such houses was also taken; that all such testimony was taken under oath, and reduced to writing, and was forwarded to Frank P. Sargent, commissioner general of immigration, at Washington, D. C.; that thereafter, on the 6th day of October, 1903, George Bruce Cortelyou, secretary of commerce and labor, being satisfied that the petitioners were unlawfully landed in the United States, duly issued a warrant for their deportation, a copy of which warrant is attached to and made a part of the return.

The warrant of transportation issued by the Secretary of Commerce and Labor in one of the cases recites that the commissioner has become satisfied from proofs submitted that Victoria Gautier, who landed at the port of New York on the 17th day of November, 1902, came into this county contrary to the prohibition of the act of Congress approved March 3, 1903 (chapter 1012, 32 Stat. 1214 [U. S. Comp. Supp. 1903, p. 172]). The recital is therefore to the effect that Victoria Gautier came into the United States contrary to the prohibition of an act passed the year following that of her coming. Prior to the act of 1903 prostitutes not imported might lawfully come into the country. There was prohibition as to imported prostitutes, and their importation was' made a crime; but there is no claim that either of the petitioners was imported into the country. The petitioner Louise Lea came into the country in August last, and, upon the facts alleged in the return, is within the prohibition of the act ·of 1903. Section 20 (3 Stat. 1218 [U. S. Comp. St. Supp. 1903, p. 180]) of that act provides that any alien who shall come into the United States in violation of law shall be deported as hereinafter provided at any time within two years after arrival. Section 21 provides that, in case the Secretary of the Treasury shall be satisfied that an alien has been found in the United States in violation of this act, he shall cause such alien, within three years after landing or entry therein, to be taken into custody and returned to the country whence he came, as provided in section 20 of this act. There is no other provision for the deportation of persons found in the country in violation of the law under which this petitioner is held.

By an act approved October 19, 1888 (chapter 1210, 25 Stat. 566 [U. S. Comp. St. 1901, p. 1294]), Congress provided for the deportation by the Secretary of the Treasury of persons found in the country in violation of the law·of 1887 (Act Feb. 23, 1887, c. 220, 24 Stat. 415 [U. S. Comp. St. 1901, p. 1292]). This was the first provision of law authorizing the deportation of immigrants found in the country. That provision was substantially like section 21 of the act of 1903. In 1891 Congress, by an act in amendment of prior laws on the subject, enacted that any alien who shall come into the United States in violation of law may be returned at the expense of those bringing him here, as by law provided, etc. (Act March 3, 1891, c. 551, 26 Stat. 1084 [U. S. Comp. St. 1901, p. 1294]).

The Circuit Court of Appeals for this Circuit, in United States v. Yamasaka, 100 Fed. 406, 40 C. C. A. 454, decided that the phrase, "as by law provided," in the act of 1891, has the effect of incorporating into that act the provisions of the act of 1888, by which the Secretary of the Treasury is authorized to deport persons unlawfully in the country; and upon this conclusion it is decided that the further provision of the act of 1891, conferring upon immigration officers power to administer oaths and take and consider testimony touching the right of immigrants to enter the United States, confers upon the Secretary of the Treasury the authority to act by and through the immigration officers, who are under his control, and to arrest and return to the country whence he came, within one year after landing, any alien who has, or who is deemed by law to have, landed in the

United States in violation of that statute, In other words, it is held that immigration officers, who are empowered by the act of 1891 to take testimony touching the right of aliens upon their arrival in a port of the United States to land, are, in virtue of that authority and of their control by the Secretary of the Treasury, authorized to exercise the authority conferred on the Secretary of the Treasury by the act of 1888 to deport persons who are found unlawfully in the country. Here, as already stated, the only authority to deport is that conferred upon the Secretary of the Treasury. The attempted deportation is by the Secretary of Commerce and Labor, under whose control and direction the officers of immigration are placed by the act creating that bureau. While the act of 1903 authorized the Secretary of the Treasury to deport persons found unlawfully in the country, the authority to determine the right of aliens to land is vested in a board of special inquiry, consisting of three members selected from immigrant officials with the approval of the Secretary of the Treasury. Where there are not three immigrant inspectors, the Secretary of the Treasury may, on the recommendation of the Commissioner General of Immigration, designate other United States officials for service.

An orderly form of proceeding before such board is prescribed, having regard to the rights of the alien applying to land, and a right of appeal is provided for. If the authority to deport aliens found in this country belongs to the immigration officers of the government, such authority should devolve upon the board specially charged with the duty of determining the right to land. It cannot be supposed that Congress was more mindful of the right of an alien seeking to land than of a person domiciled in the country whose deportation may be attempted. In the present cases the petitioners were arrested by an officer whose residence is in Seattle, and whose word was his warrant. Immediately upon the arrest the petitioners were required to take an oath and to testify against themselves. Ignorant of their rights—if persons arrested for deportation can be said to have rights—with little knowledge of the English language, without opportunity to seek the advice of friends or consult an attorney, they were hurried to the Home of the Good Shepherd, where they were, until brought into court on this writ, closely guarded, under an injunction to their keepers not to allow them to see or communicate with any one. In the meantime the officers making the arrest forwarded to the Commissioner of Immigration a report intended as the basis for a warrant of deportation. It was a report which, reaching the Secretary of Commerce and Labor through the channel of the Commissioner of Immigration, should satisfy that officer that the accused were unlawfully in the country.

The accused have not seen that report. The proceeding was ex parte, summary, and presumably secret. There is no presumption against the good faith of the officers who conducted these proceedings. The methods employed, however, leave the person attacked at the mercy of the inspector, who is accuser, arresting officer, prosecutor, judge, and jailer. By this method a citizen may be arrested and summarily committed and kept a close prisoner while the warrant

for his deportation is being procured. He has no opportunity to appeal, or to petition the courts for a writ of habeas corpus. The exercise of this authority may not be restricted to aliens. It applies to any person that the inspector decides is an alien. But notwithstanding all this, the decisions cited by the respondent are to the effect that the political department of the government is charged with the duty, not only of deciding who may come into the country, but who may remain in it, and that department may make its own rules and regulations respecting the manner in which its authority is to be exercised, and that its proceeding, of whatever character or however conducted, is due process of law.

I am of the opinion that the authority to deport in cases like these is vested in the Secretary of the Treasury. But upon the authority of the United States v. Yamasaka, 100 Fed. 406, 40 C. C. A. 454, and In re Lifieri (D. C.) 52 Fed. 293, he may exercise that authority by approving what has been done. In any event, upon the facts alleged in the return, the petitioner Louise Lea is liable to deportation, by the authority of the Secretary of the Treasury, through the agency of the board of special inquiry referred to or otherwise, and because of that fact, and notwithstanding the illegal character of the proceedings relied upon to justify her detention, I am impelled to dismiss the petition as to her, which I do with reluctance.

The demurrer to the return in the case of the petitioner Gautier is sustained, and said petitioner is discharged from custody.