LOOE SHEE v. NORTH, Immigration Com'r, et al.

(Circuit Court of Appeals, Ninth Circuit. May 3, 1909.)

No. 1,686.

1. ALIENS (§ 40*)—IMMIGRATION—STATUTES.

Act Cong. Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1907, p. 389), regulating the immigration of aliens into the United States, and providing for the deportation of alien prostitutes and such as become public charges within three years, etc, was a re-enactment and extension of Act Cong. March 3, 1903, c. 1012. 32 Stat. 1213, and prior legislation on the same subject enacted in the light of the construction placed on the prior acts by the courts.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 40.*]

2. ALIENS (§ 51*)—IMMIGRATION—PROSTITUTES.

Act Cong. Feb. 20, 1907, c. 1134, § 2, 34 Stat. 898 (U. S. Comp. St. Supp. 1907, p. 391), excludes prostitutes or women or girls coming into the United States for any immoral purpose and section 3 declares that any alien woman or girl who shall be found an inmate of a house of prostitution, or practicing prostitution, at any time within three years after she shall have entered the United States shall be deemed to be unlawfully therein, and shall be deported. Held, that where petitioner, an alien female, was found practicing prostitution in the United States within three years after her entry, she was subject to deportation, though her status at the time of entry as the wife of a citizen of the United States entitled her to enter.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 51.*]

3. ALIENS (§ 51*)—IMMIGRATION—PROSTITUTION—EVIDENCE.

Evidence that an alien female was found practicing prostitution within three years after her entry was evidence that she was a prostitute when she entered the United States, and was therefore subject to deportation as provided by Act Cong. Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1907, p. 389).

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 51.*]

4. ALIENS (§ 40*)—STATUTES—REPEAL—EXCLUSION—PROSTITUTES.

Act Cong. Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1907, p. 389), continues in force Act March 3, 1903, c. 1012, 32 Stat. 1213, providing for the exclusion of alien prostitutes, and therefore saves the government's right to deport an alien prostitute, who arrived in 1906, during the three-year period of probation.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 40.*]

5. ALIENS (§ 23*)—EXCLUSION—STATUTES—CHINESE PROSTITUTES.

Act Cong. Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1907, p. 389), providing for the exclusion of alien prostitutes, was applicable to Chinese persons, notwithstanding section 43 declares that the act shall not be construed to repeal, alter, or amend existing laws relating to the immigration or exclusion of Chinese persons or persons of Chinese descent.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 23.*]

Appeal from the District Court of the United States for the Northern District of California.

McGowan & Worley, for appellant.

Robert T. Devlin, U. S. Atty., and George Clark, Asst. U. S. Atty., for appellees.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. This is an appeal from an order of the District Court for the Northern District of California dismissing proceedings upon order to show cause why a writ of habeas corpus should not issue as prayed for in an application made on behalf of one Looe Shee.

It is alleged in the petition for a writ of habeas corpus that Looe Shee came to the United States of America from the republic of Mexico as the lawful wife of Lew Chow, a citizen of the United States, in April, 1906, and since her arrival in the United States she has continued to be, and then was, the wife of said Lew Chow; that she was being imprisoned, restrained, confined, and detained of her liberty by Hart H. North, Commissioner of Immigration at the port of San Francisco, without authority of law; that she was in custody under a warrant of deportation issued September, 1907, by the Secretary of the Department of Commerce and Labor under the provisions of Immigration Act Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1907, p. 389): that said warrant of deportation provided that she, the said Looe Shee, be deported from the United States to the Empire of China. It was alleged that said Looe Shee last resided in the republic of Mexico, and left her home therein to enter the United States as the lawful wife of Lew Chow, a citizen thereof. Upon the petition the court ordered the Commissioner of Immigration to show cause why a writ of habeas corpus should not issue as prayed for.

In the answer to the order to show cause the Commissioner of Immigration set forth his application to the Secretary of Commerce and Labor for a warrant for the arrest of Looe Shee, the issuance of the warrant, the arrest, and the taking of Looe Shee before a board of special inquiry; her appearance before the board by attorneys, who were fully advised as to their right to introduce evidence in her behalf; the refusal of her attorneys to offer any testimony in her behalf; the findings of the board:

"That Looe Shee was admitted at the port of San Francisco, where she arrived in transit from Mexico, via El Paso, Tex., on April 28, 1906. That she is a native of China, married to Lew Chow, a Chinese native of the United States, who has since deserted her and is supposed to be dead. That on the 22d instant said woman was arrested in a house of prostitution located on Ross alley, near Jackson street, this city, where she was practicing prostitution. That she has been a prostitute for a year or more last past. Upon her arrest she was given every opportunity, in accordance with the foregoing telegraphic warrant and the statute, to show cause why she should not be deported to the country whence she came, and at a regular meeting of the board of special inquiry, in accordance with the aforesaid warrant, on the advice of her attorney, she stood mute and refused to answer any question. And the above facts were ascertained from her preliminary statement taken at the time of her arrest, on the 22d instant, and from the madam of the brothel in which she was found."

The answer alleges:

"That a full and correct report in writing of the hearing before the board of special inquiry was made to the Secretary of Commerce and Labor, and thereupon the said Secretary issued the warrant for the detention and deportation of the said Looe Shee, under which she was held in custody."

The warrant is dated October 10, 1908, and is set forth in the answer. It is signed by the acting Secretary of Commerce and Labor and recites:

"That the said Looe Shee is an alien within the meaning of the said statute, is a prostitute, was a prostitute at the time of her admission into the United States, and has been found an inmate of a house of prostitution practicing prostitution," and that "the period of three years after landing had not elapsed."

The answer admitted that, prior to the time the said Looe Shee entered the United States, she went through the form of a contract of marriage and marriage ceremony with a native Chinese person named Lew Chow, which said native Chinese is mentioned in the petition in this case. In the eighth paragraph of the answer it was alleged that:

"Respondent [the Commissioner of Immigration] was advised and believed that the said contract of marriage and marriage ceremony were performed in the City of Mexico, in the United States of Mexico; that the said marriage contract and marriage ceremony were a mere sham, and a means for evading the laws of the United States prohibiting the landing of Chinese persons within the United States; that the said marriage contract and marriage ceremony were entered into and performed solely for the purpose of enabling the said Looe Shee to land in and enter the United States as the wife of a native Chinese person, when in fact the said Looe Shee was not otherwise entitled to land in or to enter the United States; and the said marriage contract was not entered into and the said marriage ceremony was not performed for the purpose of creating the relation of husband and wife, other than as therein stated."

In the court below evidence was introduced upon the issues presented by the application for the writ of habeas corpus, the order to show cause, and the answer, and the court found all of the allegations contained in the answer to be true, except paragraph 8 of the answer, to the effect that the marriage ceremony therein referred to was a sham, and was entered into for the purpose of evading the laws of the United States prohibiting the landing of Chinese persons. As a conclusion of law the court found that the petitioner was not entitled to a writ of habeas corpus as prayed for, and the proceedings were thereupon dismissed.

The proceedings for the deportation of Looe Shee were in pursuance of the following provisions of the act of February 20, 1907, entitled "An act to regulate the immigration of aliens into the United States" (34 Stat. 898):

"Sec. 2. The following classes of aliens shall be excluded from admission into the United States: * * * Prostitutes, or women or girls coming into the United States for the purpose of prostitution, or for any other immoral purpose. * * *

"Sec. 3. * * * And any alien woman or girl who shall be found an inmate of a house of prostitution or practicing prostitution, at any time within three years after she shall have entered the United States, shall be deemed to be unlawfully within the United States and shall be deported as provided by sections 20 and 21 of this act."

"Sec. 20. That any alien who shall enter the United States in violation of law, and such as become public charges from causes existing prior to landing, shall upon the warrant of the Secretary of Commerce and Labor, be taken into custody and deported to the country whence he came at any time within three years after the date of his entry into the United States. * * *

"Sec. 21. That in case the Secretary of Commerce and Labor shall be satis-

fied that an alien has been found in the United States in violation of this act, or that an alien is subject to deportation under the provisions of this act or of any law of the United States, he shall cause such alien within the period of three years after landing or entry therein to be taken into custody and returned to the country whence he came, as provided by section 20 of this act. * * * "

It appears from the answer that Looe Shee had full opportunity to be heard before the executive officers of the government upon all questions involving her right to be and remain in the United States under this statute. This brings the case within the law as declared in the Japanese Immigrant Case, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721. In that case a Japanese woman was landed at the port of Seattle, in the state of Washington, on the 11th day of July, 1901. On or about July 15, 1901, the immigrant inspector, having instituted an investigation into the circumstances of her entry into the United States, decided that she came into the United States in violation of the law, that she was a pauper, and a person likely to become a public charge; aliens of that class being excluded by Act March 3, 1891, c. 551, 26 Stat. 1084 (U. S. Comp. St. 1901, p. 1294). It was contended that the provisions of the latter act, giving to inspection officers plenary power over the classes of aliens therein referred to, should be construed to extend only to aliens who had not effected an entrance into the United States, and not to those who had lawfully entered the United States and had been incorporated into the population of the country. The proceedings in the case were in conformity with the provisions of that act and other acts of Congress then in force, and were substantially the proceedings followed in the present case under Act Feb. 20, 1907, 34 Stat. 898. This act was a re-enactment and extension of the legislation upon the subject of immigration, and made in the light of the construction placed upon the previous acts by the courts. The decision of the Supreme Court in the Japanese Immigrant Case is therefore applicable to the present case. In that case the court said:

"That Congress may exclude aliens of a particular race from the United States, prescribe the terms and conditions upon which certain classes of aliens may come to this country, establish regulations for sending out of the country such aliens as come here in violation of law, and commit the enforcement of such provisions, conditions, and regulations exclusively to executive officers, without judicial intervention, are principles firmly established by the decisions of this court. Nishimura Ekiu v. United States, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146; Fong Yue Ting v. United States, 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905; Lem Moon Sing v. United States, 158 U. S. 538, 15 Sup. Ct. 967, 39 L. Ed. 1082; Wong Wing v. United States, 163 U. S. 228, 16 Sup. Ct. 977, 41 L. Ed. 140; Fok Yung Yo v. United States, 185 U. S. 296, 305, 22 Sup. Ct. 686, 46 L. Ed. 917.

"In Nishimura's Case the court said: 'The supervision of the admission of aliens into the United States may be intrusted by Congress either to the Department of State, having the general management of foreign relations, or to the Department of the Treasury, charged with the enforcement of the laws regulating foreign commerce; and Congress has often passed acts forbidding the immigration of particular classes of foreigners, and has committed the execution of these acts to the Secretary of the Treasury, to collectors of customs, and to inspectors acting under their authority.' After observing that Congress, if it saw fit, could authorize the courts to investigate and ascertain the facts on which depended the right of the alien to land, this court proceeded: 'But, on the other hand, the final determination of those facts may

be intrusted by Congress to executive officers; and in such a case, as in all others, in which a statute gives a discretionary power to an officer, to be exercised by him upon his own opinion of certain facts, he is made the sole and exclusive judge of the existence of those facts, and no other tribunal, unless expressly authorized by law to do so, is at liberty to re-examine or controvert the sufficiency of the evidence on which he acted. Martin v. Mott, 12 Wheat. 19, 31, 6 L. Ed. 537; Philadelphia & Trenton Railroad v. Stimpson, 14 Pet. 448, 458, 10 L. Ed. 535; Benson v. McMahon, 127 U. S. 457, 8 Sup. Ct. 1240, 32 L. Ed. 234; In re Oteiza, 136 U. S. 330, 10 Sup. Ct. 1031, 34 L. Ed. 464. It is not within the province of the judiciary to order that foreigners who have never been naturalized, nor acquired any domicile or residence within the United States, nor even been admitted into the country pursuant to law, shall be permitted to enter, in opposition to the constitutional and lawful measures of the legislative and executive branches of the national government. As to such persons, the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law. Murray v. Hoboken Co., 18 How. 272, 15 L. Ed. 372; Hilton v. Merritt, 110 U. S. 97, 3 Sup. Ct. 548, 28 L. Ed. 83.

"In Lem Moon Sing's Case it was said: 'The power of Congress to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications.' And in Fok Yung Yo's Case, the latest one in this court, it was said: 'Congressional action has placed the final determination of the right of admission in executive officers, without judicial intervention, and this has been for many years the recognized and declared policy of the country.'

"What was the extent of the authority of the executive officers of the government over the petitioner after she landed? As has been seen the Secretary of the Treasury, under the above act (Act Oct. 19, 1888, c. 1210), was authorized, within one year after an alien of the excluded class entered the country, to cause him to be taken into custody and returned to the country whence he came. Substantially the same power was conferred by Act March 3, 1891, c. 551, by the eleventh section of which it is provided that the alien immigrant may be sent out of the country, 'as provided by law,' at any time within the year after his illegally coming into the United States. Taking all its enactments together, it is clear that Congress did not intend that the mere admission of an alien, or his mere entering the country, should place him at all times thereafter entirely beyond the control or authority of the executive officers of the government. On the contrary, if the Secretary of the Treasury became satisfied that the immigrant had been allowed to land contrary to the prohibition of that law, then he could at any time within a year after the landing cause the immigrant to be taken into custody and deported. The immigrant must be taken to have entered subject to the condition that he might be sent out of the country by order of the proper executive officer if within a year he was found to have been wrongfully admitted into or had illegally entered the United States. These were substantially the views expressed by the Circuit Court of Appeals for the Ninth Circuit in United States v. Yamasaka, 100 Fed. 404, 40 C. C. A. 454. * * *

"Now it has been settled that the power to exclude or expel aliens belonged to the political department of the government, and that the order of an executive officer, invested with the power to determine finally the facts upon which an alien's right to enter this country, or remain in it, depended, was 'due process of law, and no other tribunal, unless expressly authorized by law to do so, was at liberty to re-examine the evidence on which he acted, or to controvert its sufficiency.' Fong Yue Ting v. United States, 149 U. S. 698, 713, 13 Sup. Ct. 1016, 37 L. Ed. 905; Nishimura Ekiu v. United States, 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146; Lem Moon Sing v. United States, 158 U. S. 538, 547, 15 Sup. Ct. 967, 39 L. Ed. 1082."

This case was followed under revised and amendatory statutes in United States v. Sing Tuck, 194 U. S. 161, 24 Sup. Ct. 621, 48 L. Ed.

917, United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040, and Chin Yow v. United States, 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369.

It is contended, however, on behalf of Looe Shee, that, having entered the United States lawfully as the wife of a citizen of the United States, the act of Congress did not apply to her, as the wife of a citizen takes the status of her husband. But this is not a question of status, having relation only to the date of her arrival and entry into the United States. The question is: What was her status at that time, and what has it been during the probation period of three years prescribed by Congress? As said by Mr. Justice Holmes in the late case of Keller v. United States, 213 U. S. 138, 29 Sup. Ct. 470, 53 L. Ed. ——:

"For the purpose of excluding those who unlawfully enter this country, Congress has power to retain control over aliens long enough to make sure of the facts. Yamataya v. Fisher (Japanese Immigrant Case) 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721. To this end it may make their admission conditional for three years. Pearson v. Williams, 202 U. S. 281, 26 Sup. Ct. 608, 50 L. Ed. 1029. If the ground of exclusion is their calling, practice of it within a short time after their arrival is or may be made evidence of what it was when they came in. Such retrospective presumptions are not always contrary to experience or unknown to the law. Bailey v. Alabama, 211 U. S. 452, 454, 29 Sup. Ct. 141, 53 L. Ed. ——. If a woman were found living in a house of prostitution within a week after her arrival, no one, I suppose, would doubt that it tended to show that she was in the business when she arrived. But how far back such an inference shall reach is a question of degree, like most of the questions of life. And, while a period of three years seems to be long, I am not prepared to say, against the judgment of Congress, that it is too long."

This was said in a dissenting opinion; but it was not a dissent from anything that the majority of the court had said in the case. On the contrary, it was the statement of the law as it had been declared by the court in previous cases with respect to the conditions upon which aliens are permitted to be and remain in this country, and upon that subject unquestionably expressed the views of the whole court.

It is further contended that, as Looe Shee arrived in this country on April 28, 1906, and was a resident in the United States at the time of the passage of the act of February 20, 1907, the act did not apply to her. This question was before Judge Wolverton in the District Court of Oregon in the case of Ex parte Durand (D. C.) 160 Fed. 558. In a carefully considered opinion, referring to the provisions of Act March 3, 1903, c. 1012, 32 Stat. 1213, and Act Feb. 20, 1907, 34 Stat. 898, the court held that the act of 1907 continued in force the act of 1903 as to the conduct of alien prostitutes during the period of probation provided by law, and saves the right of the United States to deport one who arrived in 1906, though no proceeding was brought for that purpose until 1908. We adopt the opinion in that case as our opinion on this question in this case.

It is objected that the act of February 20, 1907, does not apply to Chinese persons, or a person of Chinese descent. The objection is based upon the provisions of section 43 of the act, which provides as follows:

"* * * Provided, that this act shall not be construed to repeal, alter, or amend existing laws relating to the immigration or exclusion of Chinese persons or persons of Chinese descent. * * *" 34 Stat. 898.

It is contended that Congress has expressed its purpose in the Chinese exclusion acts that the immigration, residence, and exclusion of Chinese persons should be governed by the laws of Congress upon that subject, and not by the general laws regulating immigration. We cannot agree to such a limitation of the act of February 20, 1907, which is entitled "An act to regulate the immigration of aliens into the United States," and by the terms of its various provisions applies to all aliens alike. To hold otherwise would be to favor the Chinese with respect to the admission of certain objectionable individuals, which could not have been the purpose of Congress. We think the construction placed by the Attorney General upon a similar provision in the act of March 3, 1903, is the construction to be placed upon this statute. 24 Op. Atty. Gen. 706. In that opinion the Attorney General said:

"There is nothing in the laws specially relating to the immigration of Chinese persons providing for the exclusion of a merchant or member of any other excepted class, although he may be suffering from a loathsome or dangerous contagious disease; and, unless the act now under consideration is applicable to him, such person may enter the United States with impunity, and the public must suffer the consequences. I can see no valid reason for concluding that the Congress intended, by the proviso in question, to imperil the public safety by allowing a diseased person, because of his Chinese descent, to enter, when the very law in which this proviso appears has, as one of its special purposes, the further and more effective protection of the public from the evil consequences to be expected as a result of the presence of one so afflicted, and to this end prescribe his exclusion."

He further said:

"To admit a Chinaman known to be suffering from a contagious disease, when another alien not so descended would be excluded because afflicted with the same disease, would to that extent defeat the legislative intent, made clear by the terms of the act, and apparently lead to unjust and unexpected results."

With respect to the objection that the warrant of deportation was signed by the acting Secretary of Commerce and Labor and not by the Secretary or Assistant Secretary of that Department, the court will take judicial notice of the departments of the government and the executive officers of such departments. Wigmore on Evidence, § 2576. The judgment of the court below is affirmed.