## Ex parte LI DICK.

(District Court. N. D. New York. December 6, 1909.)

**1. ALIENS (§ 31*)—GENERAL IMMIGRATION ACT—APPLICABILITY TO CHINESE ALIENS.**

The Chinese exclusion acts do not exclude the application of General Immigration Act Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 447), to Chinese aliens seeking to enter the United States, and rules 3 and 49 of the regulations, governing the admission of Chinese aliens adopted pursuant to such act, which provide for the examination of such aliens under that act as well as the exclusion acts, and that they shall be subject to arrest and deportation thereunder for entry in violation of its terms, are valid.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 31.*]

**2. ALIENS (§ 31*)—SURREPTITIOUS ENTRY OF CHINESE ALIEN—DEPORTATION UNDER GENERAL IMMIGRATION ACT.**

A Chinese alien entering the United States from Canada surreptitiously in the night, avoiding inspection and examination at a designated place of entry, enters in violation of Immigration Act Feb. 20, 1907, c. 1134, § 36, 34 Stat. 908 (U. S. Comp. St. Supp. 1909, p. 466), and, like any other alien so entering, is subject to arrest on a warrant issued by the Commissioner of Commerce and Labor and to be deported to Canada, or to China, the "country whence he came," under the provisions of sections 20 and 21 of the act, without regard to the provisions of the Chinese exclusion acts. And it is no defense that he is a domiciled merchant in the United States entitled to enter under such acts; the deportation in such case being with-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

out prejudice to his right to subsequently apply for admission in a lawful way.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 92; Dec. Dig. § 31.*

Citizenship of the Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing Far v. United States, 35 C. C. A. 332.]

In the Matter of Li Dick. On writ of habeas corpus and return. Writ dismissed, and petitioner remanded.

Wilson W. Hoover, for petitioner.
H. E. Owen, Asst. U. S. Atty.

RAY, District Judge. The petitioner, Li Dick, was apprehended and taken into custody at the city of Utica, near the central part of the state of New York, in the Northern district of New York, on the 22d day of October, 1909, on the charge that he was then and there a Chinese alien, and that he had surreptitiously entered the United States at or near the town of North Burke, in the county of Franklin, in said district, from the Dominion of Canada, without having produced a certificate of admission or having been examined or inspected as required by the immigration laws and regulations of the United States, and that therefor he had surreptitiously entered the United States in violation of law, especially section 20 of the Act of February 20, 1907 (34 Stat. 904, c. 1134 [U. S. Comp. St. Supp. 1909, p. 459]), entitled "An act to regulate the immigration of aliens into the United States," and also in violation of rules 3 and 49 of the regulations governing the admission of Chinese, approved February 26, 1907, as amended October 2, 1909, and adopted and issued by the Department of Commerce and Labor, Bureau of Immigration and Naturalization.

On the 25th day of October, 1909, the acting Secretary of Commerce and Labor issued his warrant under the provisions of sections 20 and 21 of said immigration act and the rules referred to, and same was placed in the hands of E. G. Sperry, Chinese inspector and inspector of immigration of the United States in the Northern district of New York for execution. Said warrant reads as follows:

United States of America.

Department of Commerce and Labor.

No. 52399/9.                    Washington.

To John H. Clark, Commissioner of Immigration, Montreal, Canada, or to Any Immigrant Inspector in the Service of the United States:

Whereas, from evidence submitted to me, it appears that Wong You, Li Dick, Wong Chun and Hom Chee, aliens, who landed at some unknown port on or about the 23d day of October, 1909, have been found in the United States in violation of the act of Congress approved February 20, 1907, to wit, that the said aliens are unlawfully in the United States in that they entered without inspection: I, Ormsby McHarg, Acting Secretary of Commerce and Labor, by virtue of the power and authority vested in me by the laws of the United States, do hereby command you to take into custody the said aliens and grant them a hearing to enable them to show cause why they should not be deported in conformity with law. The expenses of execution and detention are authorized, payable from the appropriation "Expenses of Regulating Immigration 1910." Pending disposition of their cases the aliens may be re-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

leased from custody upon furnishing a satisfactory bond in the sum of five hundred dollars each. For so doing, this shall be your sufficient warrant.

Witness my hand and seal this 25th day of October, 1909.

J.S.B.          [Seal.]                                    Ormsby McHarg,
11–1120a                                      Acting Secretary of Commerce and Labor.

Thereupon, and on the 27th day of October, 1909, said inspector, under and by virtue of said warrant, took the said Li Dick into custody, and has held him in custody under and by virtue of said warrant ever since. He was so held in custody by said inspector when this writ of habeas corpus was applied for and allowed.

On the 27th day of October, 1909, and upon his arrest under such warrant, Li Dick was taken before H. Edsell, an inspector duly authorized to conduct the hearing and before the officers named in such warrant and then and there given full opportunity to show cause why he should not be deported. Li Dick was then and there informed of his right to be represented by counsel and to inspect all the evidence upon which the Secretary of Commerce and Labor had acted in directing the arrest, and he was also then and there given an opportunity to offer evidence in his behalf. An examination was then and there had, and said Li Dick was duly sworn. He then stated that he did not wish to be represented by counsel at that hearing, but might decide to do so later on.

On the 22d day of October, 1909, Li Dick had been questioned after his arrest near Utica by inspector Edsell and his examination reduced to writing. He then gave a statement as to the time, place, and method of his entering the United States and as to his life, family, occupation, and various residences. On the 27th of October, his attention was called to that statement, and he said that the statement made on the 22d was the truth, and that his answers to the same questions would be the same, and that the record of such examination might be incorporated as a part of the record of the hearing on the 27th, and it was incorporated accordingly.

From that statement, which is made a part of the return, it appeared and appears that Li Dick is married, and that his wife resides in China, and that he has no children. He is 35 years of age and first came to the United States in 1894. He belonged to a firm dealing in laundry supplies until seven or eight years ago, when it closed, and he then purchased an interest in the store of Sooey Weh Lung, Newark, N. J. He entered on a paper sent to him in China the contents of which he did not or could not state. He admits that he was born in China. He remained in the United States four years and then went to China and returned to the United States in 1899. He stated that he had remained a member of the firm last mentioned, and that "for the last year or so I have been traveling from place to place selling Chinese groceries for this concern." Li Dick then denied that he had been in Montreal, Canada, recently, but stated that he came to the place where arrested on the 22d from Albany. He then left the stand, but later returned and stated that he left Montreal, Canada, on the Monday evening preceding his arrest and came by automobile; that he came to Montreal from China, where he had been some eight or nine months, and that he had been in Montreal only a few days. He also stated that he had no

property in the United States and only small amounts of money due him, but also said that he had an interest of $500 in the store of Sooey Weh Lung, 28 Lafayette street, Newark, N. J. He was asked why he smuggled into the United States, and stated: That he had lived here before and wanted to come back again; that he did not make preparations to return at the time he left, as several of his friends had been turned down, and he thought he should meet their fate too so did not apply; that since he left the United States last he had not applied for readmission at a port of entry for Chinese; that he was to pay the man who brought him into the United States from Montreal in the automobile $170; that they remained in a barn after leaving the automobile until they started for the train and took a rig and drove several hours; that the same party who brought them from Montreal to the barn brought them to the train; that he left for China through Malone.

It thus appears from his own statement that he left the United States something like 9 to 12 months ago and returned to China. It might be inferred he had no intention of returning to the United States at that time and that his return was an afterthought. It does appear from his own statement and is not denied that he returned surreptitiously in the manner described without inspection or examination and without producing a certificate of any description. His return, if the immigration laws have any application to alien Chinese persons, was in violation of the laws of the United States, which require aliens to present themselves at a port of entry and submit to an examination, etc., and also in violation of the rules and regulations referred to.

The return of the inspector states: That Inspector Edsell, after due consideration, did find upon the evidence and testimony produced before him that Li Dick is an alien, a subject of China, and that he has entered the United States surreptitiously and without examination under the immigration laws at the place designated as a port of entry, and that Li Dick was on the 27th day of October, 1909, within the United States in violation of law. Also, that a report of the hearing before the immigration officer, together with the evidence given by Li Dick, was immediately forwarded to the Secretary of Commerce and Labor as provided by law, and that the said report, evidence, and findings thereon were being considered by the said Secretary of Commerce and Labor at the time the writ of habeas corpus was issued. Also, that at the time the writ was issued Li Dick was in the custody of said Sperry as such officer of the United States under said warrant of arrest issued by the Secretary of Commerce and Labor awaiting the determination and decision of such secretary upon the said report, evidence, and findings, and that the holding and detention of Li Dick was under and by virtue of the laws and authority of the United States of America. The return was not traversed; but on the hearing Li Dick, by his counsel, asked permission to introduce evidence showing that prior to his last departure for China he was a Chinese merchant, member of the firm aforesaid, at Newark, N. J., engaged in no other work or business and is now such merchant. The United States objected to the introduction of such testimony; but the court permitted

it, not for the purpose of entering on a trial of that question, but for the purpose of showing that Li Dick makes a bona fide claim that he is a Chinese merchant domiciled in the United States, having no other business, and that he is not a laborer, and that he has the right to come and go freely and is not subject to the provisions of the immigration laws.

On the hearing Li Dick, by his attorney, Mr. Hoover, entered the following objections to the return and the sufficiency thereof, viz.:

"First. That he was under unlawful duress and restraint at the time said examination was had, and that his signature thereto was not on its face his voluntary act, in that he had not been arrested under a warrant issued by a judge, justice, or commissioner, as provided by section 13 of the act of Congress of May 5, 1892, and it is affirmatively shown that he was arrested within the borders of the United States, to wit, not at Malone, but at or near Utica, N. Y. The applicant objects to the admission in evidence of the finding of the Chinese inspector thereto annexed on the ground that the proceeding was without warrant of law and in contravention of the express provision of the act of 1892, above cited, and that Li Dick was not lawfully before the Chinese inspector for examination.

"Second. That the examination showed that Li Dick was a resident domiciled merchant in the United States having a right under the treaty 'to come and go freely,' and that he entered the United States, as appears by the statement on which the inspector based his finding, in the exercise of his lawful right.

"Third. That there cannot be a surreptitious exercise of such lawful right.

"Fourth. That there is no provision of law requiring applicant to appear before any officer or produce any official document to entitle him to enter into the United States; he being a domiciled resident merchant, as appears from said examination.

"Fifth. That there is no authority for declaring applicant's right of domicile forfeited by reason of his not appearing before the Chinese inspector at the port of Malone.

"Sixth. That the judicial tribunal named in section 13 of the act of 1888 is the only one to say and determine the rights of applicant on the facts shown on the return.

"Applicant further objects to the admission of the document purporting to be a warrant of arrest issued by the acting Secretary of Commerce and Labor on the 25th day of October, 1909, upon the ground that it appears from the return of said Chinese inspector and from the recitals in the body of the warrant that the applicant had entered the United States on the 23d day of October, 1909, and that the applicant was seized and put under bodily restraint without any warrant by the Chinese inspector and was detained by him without any authority of law, and that said warrant above recited does not justify either the original arrest or further detention."

By the act of February 20, 1907, "An act to regulate the immigration of aliens into the United States," it is provided, in section 2:

"That the following classes of aliens shall be excluded from admission into the United States."

Then follows a description of such excluded classes, and these include idiots, imbeciles, feeble-minded persons, epileptics, insane persons, persons who have been insane within five years, paupers, persons likely to become a public charge, persons afflicted with tuberculosis or with a loathsome or dangerous disease, persons not above included who are found and certified to be mentally or physically defective so as to affect the ability of such alien to earn a living, persons convicted of or who admit having committed a felony or other

crime or misdemeanor involving moral turpitude, polygamists or persons who admit their belief in the practice of polygamy, anarchists or persons who believe in or advocate the overthrow by force or violence of the government of the United States, or of all government, or of all forms of law, etc.

That this provision is constitutional and proper cannot be questioned. That Congress may devolve the determination of the question whether an alien seeking admission into the United States for the purpose of residence here comes within the excluded class on an executive or administrative branch of the government is too well settled to be doubted or questioned. That Congress may establish ports of entry and provide for inspection and examination thereat, and that all aliens shall enter through such ports, if at all, and that entry at any other place shall be unlawful, cannot be doubted, and that it has done so is plain. The language of the immigration act in its terms applies to all aliens. It makes no exception in favor of alien Chinese persons. Section 36 of the act provides:

"That all aliens who shall enter the United States except at the seaports thereof, or at such place or places as the Secretary of Commerce and Labor may from time to time designate, shall be adjudged to have entered the country unlawfully and shall be deported as provided by sections twenty and twenty-one of this act, provided that nothing contained in this section shall affect the power conferred by section thirty-two of this act upon the Commissioner General of Immigration to prescribe rules for the entry and inspection of aliens along the borders of Canada and Mexico."

Section 32 provides as follows:

"That the Commissioner General of Immigration, under the direction or with the approval of the Secretary of Commerce and Labor, shall prescribe rules for entry and inspection of aliens along the borders of Canada and Mexico, so as not to unnecessarily delay, impede, or annoy passengers in ordinary travel between the United States and said countries, and shall have power to enter into contracts with transportation lines for the said purpose."

Ports of entry on the Canada border have been duly designated; Malone in the Northern district of New York being one. Li Dick did not enter at one of these or at any other port of entry. He came in surreptitiously in the nighttime avoiding inspection and examination.

Rules 3 and 49 of the regulations governing the admission of Chinese aliens as amended, approved by the Secretary of Commerce and Labor, and promulgated by the Commissioner General, read as follows:

"Rule 3. Chinese aliens shall be examined as to their right to admission to the United States under the provisions of the law regulating immigration as well as under the laws relating to the exclusion of Chinese (24 Op. Atty. Gen. 706; 164 Fed. 506; 170 Fed. 566). As the immigration act relates to aliens in general, the status of Chinese applying for admission must first be determined in accordance with the terms of that law and of the regulations drawn in pursuance thereof; then, if found admissible under such law and regulations, their status under the Chinese exclusion laws and regulations shall be determined. In order to avoid inconvenience, delay, or annoyance to Chinese applicants arising through misunderstanding, and in the interest of good administration, examination under both sets of laws and regulations shall be made, in the order stated, only at the ports named in rule 4 hereof."

"Rule 49. Orders for the deportation of Chinese arrested and tried in accordance with the Chinese exclusion laws can be issued only by a justice, judge, or commissioner of the United States court upon his decision that such Chinese have been found to be unlawfully in the United States, and the cost of making any such deportation is payable from the appropriation 'Expenses of regulating immigration' (Chinese). Aliens, including Chinese (170 Fed. 566), who enter the United States surreptitiously 'shall be adjudged to have entered the country unlawfully and shall be deported as provided in sections 20 and 21' of the immigration act (section 36). Therefore, in arresting aliens, including Chinese, who have entered the United States in violation of the immigration law and regulations, immigration officials shall follow the procedure prescribed in the 'Rules relating to deportation' of the Immigration Regulations of July 1, 1907 (rules 31–39), so far as said regulations are practically applicable to such cases."

Section 22 of the act provides for and authorizes the making of rules and regulations by the Commissioner General of Immigration. Section 20 provides:

"That any alien who shall enter the United States in violation of law, and such as become public charges from causes existing prior to landing, shall upon the warrant of the Secretary of Commerce and Labor, be taken into custody and deported to the country whence he came at any t me within three years after the date of his entry into the United States."

Section 21 says:

"That in case the Secretary of Commerce and Labor shall be satisfied that an alien has been found in the United States in violation of this act, or that an alien is subject to deportation under the provisions of this act or of any law of the United States, he shall cause such alien within the period of three years after landing or entry therein to be taken into custo ly and returned to the country whence he came as provided by section 20 of t is act," etc.

Section 23 provides:

"That the duties of the Commissioner of Immigration shall be of an administrative character, to be prescribed in detail by regulations prepared under the direction or with the approval of the Secretary of Commerce and Labor."

Suitable rules and regulations and modes of procedure have been adopted and promulgated and have all the force of law so far as authorized and not inconsistent with the express provisions of law or of treaties or the Constitution.

Section 43 of the act refers to the Chinese exclusion acts, and provides:

"That this act shall not be construed to repeal, alter, or amend existing laws relating to the immigration or exclusion of Chinese persons or persons of Chinese descent," etc.

It does not state that Chinese aliens of any class shall not come within its provisions.

If Chinese aliens seeking to come into the United States, to immigrate thereto, or to come therein and reside therein, are subject to any of the provisions of the immigration act, it is clear that Li Dick, concededly a Chinese alien, entered the United States unlawfully and is subject to deportation. See section 36 quoted. In such case he is subject to the provisions of sections 20 and 21, unless the Chinese exclusion acts provide some other course of action or remedy in such a case. If the immigration act of 1907, as to remedies and proce-

dure, has no application to Chinese aliens, then, of course, the arrest and detention of Li Dick under the warrant of the Secretary of Commerce and Labor quoted is unlawful, unless such warrant is authorized by the Chinese exclusion acts themselves, and, if not so authorized, there is no jurisdiction to hold him or subject him to examination by virtue of that warrant. The force and validity of rules 3 and 49 are also involved.

If a domiciled alien Chinese merchant leaves the United States and goes to China, intending his visit to be temporary only, and there becomes an imbecile, an epileptic, insane, afflicted with tuberculosis or some loathsome or dangerous contagious disease, or is there convicted of a felony or crime involving moral turpitude, or becomes a polygamist or an anarchist, and then returns to the borders of the United States seeking to enter this country, is he entitled to enter freely, unquestioned, and without examination or inspection? I think not. The fact that he was a merchant and was domiciled in the United States when he left does not entitle him to return, if during his absence he has voluntarily or involuntarily become one of the class of aliens our laws exclude. If he does succeed in smuggling himself into the United States surreptitiously, is the inquiry when he is apprehended confined to the question whether or not he is a domiciled alien Chinese merchant having no other business? I think not. If he may be rejected, denied admission, or, in case he enters surreptitiously, deported, for the reasons mentioned, do the Chinese exclusion acts apply and afford the remedy, and must the methods of arrest, examination, and deportation there provided be followed? If those methods there pointed out and prescribed, and the tribunals there, in those exclusion acts named, are exclusive as to Chinese aliens, then the Secretary of Commerce and Labor is without jurisdiction to arrest and hold an alien Chinese person who surreptitiously enters the United States in violation of the immigration laws, and, while we have a violation of those laws and remedies for their violation pointed out therein, such remedies do not apply to alien Chinese, and the authorities must resort to the procedure and remedies pointed out in the Chinese exclusion laws.

So the contention is that, Li Dick having evaded the authorities at the Canada border, having evaded examination and inspection in violation of law, and having been found unlawfully in the United States because of such unlawful entry and apprehended in the United States, he must be brought before some justice, judge, or commissioner of a court of the United States, and that he cannot be deported unless by such officer "found to be one (that is, an alien Chinese person) not lawfully entitled to be or remain in the United States." This would place the trial, examination, and inspection of every Chinese person "found unlawfully" within the United States, no matter how he got here, in the courts of the United States; that is, before a justice, judge, or commissioner, as provided by section 12 of the Act of May 6, 1882 (22 Stat. 61, c. 126), as amended July 5, 1884 (23 Stat. 117, c. 220 [U. S. Comp. St. 1901, p. 1310]), or section 13 of the Act of September 13, 1888 (25 Stat. 479, c. 1015 [U. S. Comp. St. 1901, p. 1317]). The contention is that, once across the Canadian or Mexican border, the

Chinese alien is no longer subject to inspection and examination by the immigration officers at the designated ports of entry for disease, etc., which, if found to exist, would have precluded his entrance into the United States, but a justice, judge, or commissioner of the courts of the United States must make all that examination or investigation, if made at all. The immigration act provides for boards of special inquiry at ports of entry, and section 10 of the act provides:

"That the decision of the board of special inquiry, hereinafter provided for, based upon the certificate of the examining medical officer, shall be final as to the rejection of aliens affected with tuberculosis or with a loathsome or dangerous contagious disease, or with any mental or physical disability which would bring such aliens within any of the classes excluded from admission to the United States under section two of this act."

If the contention of the petitioner be correct, this section has no application to alien Chinese persons found unlawfully in the United States who have entered surreptitiously.

In Lem Moon Sing v. United States, 158 U. S. 538, 547, 15 Sup. Ct. 967, 39 L. Ed. 1082, cited and approved United States v. Wong Kim Ark, 169 U. S. 699, 18 Sup. Ct. 456, 42 L. Ed. 890, it was settled that statutes excluding or regulating the entry of alien Chinese apply to those who, having acquired a commercial domicile within the United States, leave for a temporary purpose and then claim the right under some law or treaty to re-enter. In other words, all aliens of whatever nationality may be excluded altogether, or their return regulated and conditions of return imposed in case they were here lawfully and departed for a temporary purpose only. I find nothing in the laws of the United States, or in the treaty with China, that grants any special privilege to Chinese aliens who have gained a commercial domicile as to their coming and going between the United States and China or any foreign country. Persons belonging to that class of Chinese aliens are neither exempted from inspection or examination on seeking to re-enter the United States, nor permitted by any provision of law to re-enter at any point they select. Being aliens, they must come in at the ports of entry designated and under the conditions imposed as to disease, conviction of crime, etc. If the law is in such shape that alien Chinese persons, who surreptitiously enter the United States in violation of law and in defiance thereof and are then apprehended as having violated the law as to entry so as to be then found unlawfully in the United States, are entitled to be arrested and held by a justice, judge, or commissioner of the United States courts only, such persons have greater rights and privileges than aliens of any other class, rights and privileges not granted to aliens of any other nationality, and, instead of being on a par with those of the most favored nations, they have superior rights, and our laws offer a premium on the surreptitious entry of Chinese aliens. No one contends that, where a Chinese alien duly applies for admission at a port of entry, or is stopped at the border before entry, he is not subject to inspection, examination, and rejection without being taken before a justice, judge, or commissioner. I do not think the law is in the condition suggested as to Chinese aliens who surreptitiously gain entrance into the United States. I do not think the law

offers a premium, or special privileges, to those Chinese aliens who enter surreptitiously and in violation of law. The proposition, in principle at least, is covered by the decision in Looe Shee v. North (C. C. A., Ninth Circuit) 170 Fed. 566, 571, 572. There a Chinese alien, prostitute, who had entered or was here in violation of the provisions of the immigration laws referred to, was held subject to deportation under those laws and by the procedure there prescribed.

In so far as the status of Li Dick is concerned in his relation to the Department of Commerce and Labor and Bureau of Immigration, I am of the opinion that while he was, in a sense, "found unlawfully within the United States," he was when found and apprehended in precisely the same condition as to his right to be and remain in the United States, as though he had then presented himself at a port of entry for admission, or had been apprehended by the immigration officers in the very act of crossing the border into the United States in violation of law at some point remote from a port of entry; and there stopped by them. Can there be any question that the immigration officers may prevent such an entry by a Chinese alien even though he had a mercantile domicile in this country prior to his departure, even though such departure and absence was intended to be temporary only? In this case Li Dick had just entered or crossed the border secretly and in the nighttime. He had not reached his destination in the United States. He had not settled down and become a part of the resident population. He was still engaged in the act of surreptitiously entering the United States as much as though he had been on foot running to gain entrance and had reached a point 10 or 20 rods this side the boundary line when actually overtaken and apprehended. In such a case as that, must the alien Chinese person be taken before a justice, judge, or a commissioner as one found unlawfully within the United States? Clearly not. Ex parte Chow Chok et al. (C. C.) 161 Fed. 627, affirmed by Circuit Court of Appeals, 163 Fed. 1021, 90 C. C. A. 230; United States v. Ju Toy, 198 U. S. 263, 25 Sup. Ct. 644, 49 L. Ed. 1040.

In my opinion he is lawfully in the custody of the Chinese inspector, and inspector of immigration and the immigration officers may examine into his case and return him to Canada if he is denied admission. In my opinion for purposes of disposition by the immigration officers under the immigration law he is deemed to be in Canada seeking admission into the United States. I know of no right he has gained by surreptitiously entering in defiance and violation of law. When returned to Canada, whence he came, he may present himself at a port of entry, submit to examination and inspection, present his case as an alleged domiciled Chinese merchant entitled to return to and remain in the United States, and if he sustains his claim no doubt the immigration officers will admit him. If he is denied a fair and full hearing, or an arbitrary or unlawful decision is made, habeas corpus will afford a full remedy. There is no law by which such officers or the department can impose upon him any judgment of forfeiture of that right, if it exists, because of his surreptitious entry. The penalty is a return to the "country whence he came." Sections 20 and 21 both

provide for a deportation or return "to the country whence he came." This may not mean China in this case, but the Dominion of Canada. Section 36 says: ·

"That all aliens who shall enter the United States, except at the seaports thereof, or at such place or places as the Secretary of Commerce and Labor may from time to time designate, shall be adjudged to have entered the country unlawfully and shall be deported as provided by sections twenty and twenty-one of this act." ·

But it is said that difficulties arise; that, having left the Dominion of Canada, the alien Chinese person has lost his right to be there; that the authorities of that Dominion will not receive him; that the United States will have Li Dick on its hands; and that he is doomed to perpetual confinement unless this government permits him to go at large, as it has no right to deport him to China. All this, if true, does not deprive the immigration officers of jurisdiction. However, no such consequences follow. If the Dominion of Canada refuses to permit the return of such person to its territory, assuming he must be sent there and that he cannot be returned directly to China, a question I do not now decide, he is not as a consequence lawfully in the United States or entitled to be or remain here. By his own wrongful act, violation, and defiance of law, he finds himself in a place where he has no right to be; that is, he is "found unlawfully in the United States," within the intent and meaning of the Chinese exclusion laws. He has entered in violation of law and is deemed unlawfully here. In such case he may be turned over to the Chinese inspectors as such, arrested, and held under the provisions of the Chinese exclusion laws by the warrant of any justice, judge, or commissioner of the courts of the United States, and it would be the duty of such officer to find that, having surreptitiously entered the United States in defiance and violation of law, he is here illegally and "found unlawfully in the United States," and deportation to China would follow as matter of course. Act May 5, 1892, c. 60, § 2, 27 Stat. 25 (U. S. Comp. St. 1901, p. 1319), which reads as follows:

"That any Chinese person or person of Chinese descent, when convicted and adjudged under any of said laws to be not lawfully entitled to be or remain in the United States, shall be removed from the United States to China, unless he or they shall make it appear to the justice, judge, or commissioner before whom he or they are tried that he or they are subjects or citizens of some other country, in which case he or they shall be removed from the United States to such country; provided, that in any case where such other country of which such Chinese person shall claim to be a citizen or subject shall demand any tax as a condition of the removal of such person to that country, he or she shall be removed to China."

The illegal conduct of such alien Chinese person would not operate to shield him from such consequences.

I am of the opinion that the United States has two remedies in this case and may pursue them in the order it has prescribed: That Li Dick is lawfully held and detained under the warrant quoted. That being so lawfully detained and held, and his case not having passed to judgment or a determination by the Secretary of Commerce and Labor, the judicial department of the government has no right

to interfere or take such Chinese person from its custody or possession. "It is settled doctrine that a court of competent jurisdiction having possession of a person cannot be deprived of the right to deal with such person by habeas corpus until its jurisdiction is exhausted, and that no court of another and independent sovereignty has the right to interfere with such custody." In re Johnson, 167 U. S. 120, 125, 17 Sup. Ct. 735, 42 L. Ed. 103; Ableman v. Booth, 21 How. 506, 16 L. Ed. 169; and many other cases. True, the Department of Commerce and Labor and its officers, even when a board is formed as prescribed, for the examination of certain cases, is not a court. But it is given jurisdiction by law to hear certain cases and decide certain questions and enforce its judgments. As has been held in administering the Chinese exclusion acts, the courts have a certain limited supervisory power; but the power to take a Chinese alien from the Department of Commerce and Labor while it is engaged in examining into the case and before its decision is made is impliedly denied. Chin Yow v. United States, 208 U. S. 8, 11, 28 Sup. Ct. 201, 52 L. Ed. 369; United States v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040.

But whether denied or not, the principle enunciated in Re Johnson, supra, should apply and govern the courts of the United States in dealing with the executive and administrative departments of the government up to the time they have pronounced judgment. If that judgment is arbitrary, if no opportunity to be heard or give evidence was afforded, or if it be clearly in excess of jurisdiction, the courts may interfere. Chin Tow v. United States and United States v. Ju Toy, supra. It is no new doctrine that the sovereign power may provide two tribunals with concurrent jurisdiction. Here we have the Chinese exclusion laws and also the general immigration laws. The exclusion laws were not enacted for the enforcement of the immigration laws as to Chinese aliens, although they are applicable and may be used for that purpose in some cases. There are cases where they would be inadequate and inefficient, as is pointed out in 24 Op. Atty. Gen. 706, and Looe Shee v. North (C. C. A.) 170 Fed. 572.

The fact, if it be a fact, that Li Dick, prior to his last departure for China, had gained a domicile in the United States as a Chinese merchant (Act Nov. 3, 1893, c. 14, 28 Stat. 7 [U. S. Comp. St. 1901, p. 1320]), is no defense to the pending proceeding in the Department of Commerce and Labor. As stated, by entering surreptitiously, he has not forfeited his right to return to a port of entry, after deportation, and apply for admission on the ground that he is a domiciled merchant, submit to an examination and an inspection, prove if he can, as required by law, that he had such a domicile and has not abandoned it and has his commercial interests here. Should he do that, and no lawful reason for his exclusion appear, it would be the duty of the immigration officers to admit him, and it is presumed they would do their duty. However, when he avoided compliance with the law relating to his entry into the United States, defied and violated it, and by violating law surreptitiously entered, he placed himself unlawfully in the United States, and he gained no right by doing so, and by the ex-

press terms of the immigration laws he is to be sent back to the place whence he came. The law is express and explicit. There is no doubt, if Canada refuses to receive him, that he can be taken before a justice, judge, or commissioner and deported, for physically he is within the United States and cannot be heard to say that he is not. Legally he is here by violation of law, and, so far as he is concerned or can be heard to say, is found unlawfully here. He has no right to be here, as he did not comply with the statutes and rules governing the entry of domiciled Chinese merchants, and until he has done that at the proper time and place his right to be here as such merchant is suspended. He cannot now be allowed to plead or assert that right as a bar to deportation, even if he might assert it at the proper time and place and in the proper manner. In no other way can there be an efficient and effective enforcement of our laws.

The United States has the right to say where and when and how all aliens shall apply for admission and be heard on the question of their right, and a compliance with those requirements is a condition of their being heard at all on the question of their right to enter or reside here. Li Dick by his own wrong and violation of law placed himself in the United States, and thereby incurred the penalty of expulsion. He cannot avoid the penalty of that illegal act by showing he had a prior right to come into the United States at the designated place on complying with the law he has violated. He did not have the right to come and go freely, and his case is not like that of a citizen of the United States arrested for having come in illegally on the supposition he was an alien. In such case citizenship is an absolute defense to the proceeding, as there is no law regulating the entry of our citizens on returning from abroad. This principle does not necessarily apply to one claiming to have been born here, to be a citizen of the United States. The immigration laws and Chinese exclusion acts by their terms apply to aliens only. They have no application to citizens of the United States, except in so far as the mode of procedure, subject to review by the courts, is applicable for the determination of the question of fact whether or not the applicant is a citizen of the United States. When that question of fact is determined in his favor, he is entitled to come and go at will so far as those laws are concerned. But Li Dick concedes that he is a Chinese person, an alien, that he departed to China some eight or nine months ago, without making any preparation or arrangements for his return, and that when he did return he purposely failed to comply with the law and entered surreptitiously. I think the law clear that he must be returned to Canada, or deported to China if Canada will not receive him, and that his rights as a domiciled merchant cannot be brought in question in these proceedings or the proceedings pending before the Department of Commerce and Labor, Bureau of Immigration. The warrant is not void, the Department has jurisdiction and possession of his person, and, at this stage of the case, at least, the courts should not and will not interfere.

The writ must be dismissed, and Li Dick remanded.