Ex parte LI DICK.

(Circuit Court, N. D. New York. March 16, 1910.)

1. ALIENS (§ 53*)—"ENTRY IN VIOLATION OF LAW"—DEPORTATION.

Failure of an alien to enter at a port of entry and submit to examination and inspection and entering surreptitiously is an "entry in violation of law," so that an alien so entering is found in the United States in violation of the Immigration Act Feb. 20, 1907. c. 1134, § 36, 34 Stat. 908 (U. S. Comp. St. Supp. 1909, p. 466), and is subject to deportation.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 53.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. ALIENS (§ 51*)—DEPORTATION—PORT OF RETURN.

Immigration Act Feb. 20, 1907, c. 1134, § 35, 34 Stat. 908 (U. S. Comp. St. Supp. 1909, p. 466), provides that the deportation of aliens arrested within the United States after entry, and found to be illegally therein, shall be to the trans-Atlantic or trans-Pacific ports from which such aliens embarked for the United States; or, if such embarkation was for foreign contiguous territory, to the foreign port at which such aliens embarked for such territory. *Held* that, where aliens come to the United States by sea from trans-Atlantic or trans-Pacific ports, such section fixes the place, on their illegal entry, to which they shall be returned, namely, to the trans-Atlantic or trans-Pacific port from which they embarked for the United States or contiguous territory, regardless of their native country or the country of their former residence.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 54.*]

3. ALIENS (§ 18*)—REGULATION—ADMISSION AND REJECTION—DEPORTATION.

Congress has power to regulate and control the admission, rejection, and deportation of aliens.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 70–72; Dec. Dig. § 18.*]

4. ALIENS (§ 32*)—IMMIGRATION ACT—APPLICATION TO CHINESE.

Immigration Act Feb. 20, 1907, c. 1134, § 43, 34 Stat. 911 (U. S. Comp. St. Supp. 1909, p. 469), providing that it shall not repeal, alter, or amend existing laws relating to immigration or exclusion of Chinese or of persons of Chinese descent, is to be construed in connection with the Chinese exclusion laws, so that a Chinese person entering the United States surreptitiously and without right to enter may be deported in accordance with the regulations of the Department of Commerce and Labor under the immigration act, and is not entitled to trial and examination before a justice, judge, or commissioner under the exclusion laws.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 32.*]

Li Dick seeks discharge on writ of habeas corpus claiming that he is illegally held and deprived of his liberty on a warrant of deportation made January 29, 1910, by the Acting Secretary of Commerce and Labor commanding John H. Clark, Commissioner of Immigration, to return said Li Dick to "the country whence he came." Writ dismissed.

See, also, 174 Fed. 674.

Meyer Greenberg, for petitioner.
H. E. Owen, Ass't U. S. Atty.

RAY, District Judge. The warrant of deportation, signed by the Acting Secretary of Commerce and Labor, made January 29, 1910, states that from proofs submitted to him, such secretary, after due hearing before Immigrant Inspector H. Edsell, held at Malone, N. Y. (Malone being a port of entry established by law), he has become satisfied "that Li Dick, alien, who landed at the port of Vancouver, B. C., per S. S. Empress of China, on the 26th day of September, 1909, is in this country in violation of the act of Congress approved February 20, 1907 [Act Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 447]), to wit: That the said alien entered the United States in violation of section 36 of the above act, and rule 24 of the immigration regulations, and without being inspected under any of the various provisions of the said act" and that the period of three years after landing has not elapsed. The warrant

then commands the commissioner of immigration "to return the said alien to the country whence he came at the expense of the steamship importing him"; also "authority is granted for the detail of an officer or employé to take charge of this alien and convey him to Vancouver, B. C., for deportation, the expenses involved, including services of an attendant to assist in delivery, at a nominal compensation and expenses both ways being authorized payable from the appropriation expenses of regulating immigration, 1910."

The evidence annexed to the return establishes that Li Dick, a Chinese alien, was apprehended and taken into custody on or about the 22d day of October, 1909, at or near Utica, N. Y., as one who had entered the United States surreptitiously and in violation of our immigration laws and rules and regulations a short time before. October 25, 1909, a warrant was duly issued which is set out in full in Ex parte Li Dick (D. C.) 174 Fed. 674, 675, and the case was fully inquired into, and all forms of law were complied with. Pending investigation Li Dick swore out a writ of habeas corpus which was disposed of as set forth in the report of that case, and the writ was dismissed. As this court indicated that Li Dick, if deported, might return and apply for admission on the ground he had obtained a commercial status here prior to his departure for China late in 1908 or early in 1909, and his return and entry to the United States in violation of said immigration laws, the Secretary of Commerce and Labor prior to closing the case fully investigated that question so as not to do a vain thing. Li Dick has told different and conflicting stories in regard to his being in the United States, and his going and coming. It is evident that much perjury has been committed by Li Dick and in his behalf, but it is not difficult from the evidence to find the truth to be that Li Dick is a Chinese alien, and one not entitled to be or remain in the United States or to go and come freely. He was connected with a firm of Chinese merchants at Newark, N. J., prior to his going to China in the latter part of 1908, or early in 1909, but on his departure he made no effort to arrange matters so as to make his return easy, assuming he was a Chinese merchant, and I think the evidence discloses that he had no such status. September 26, 1909, he landed at Vancouver, B. C., which is foreign territory contiguous to the United States, from steamship Empress of China, having embarked at a port in China for such foreign contiguous territory, intending to pass through Canada and thence surreptitiously into the United States without examination or inspection, and not at a port of entry, and hence in violation of our immigration laws, rules, and regulations. This he did, coming in by automobile in the night, in company with other Chinese aliens who were entering in the same way.

Section 36 of the immigration laws (Act Feb. 20, 1907), provides:

"Sec. 36. That all aliens who shall enter the United States except at the seaports thereof, or at such place or places as the Secretary of Commerce and Labor may from time to time designate, shall be adjudged to have entered the country unlawfully and shall be deported as provided by sections twenty and twenty-one of this act: Provided, that nothing contained in this section shall affect the power conferred by section thirty-two of this act upon the commissioner general of immigration to prescribe rules for the entry and inspection of aliens along the borders of Canada and Mexico."

Rule 31, relating to the deportation of aliens, provides:

"Rule 31. Deportation, Aliens Subject To.—Aliens of the following classes are subject to arrest, upon the warrant of the Secretary of Commerce and Labor, and to deportation to the country whence they came, at any time within three years after landing or entry: * * *

"(d) Aliens who are found to have entered the United States at any other place than at the seaports thereof or at one of the ports or places designated in rules 24 and 26 hereof, and aliens found to have entered at a seaport, but at any time or place other than as designated by the immigration officers." Sections 18, 38.

Rule 24 fixes ports of entry for aliens on the Canadian border, and says:

"And any alien who enters the United States across such border at any other point shall be deemed to have entered the country unlawfully and shall be arrested and deported under sections 20, 21, and 35 of said act in the manner provided by rule 34 hereof," etc.

Rules 34 and 35 relate to procedure, and were complied with.

Section 20 of the act states that any alien who enters the United States in violation of law shall be taken into custody and "deported to the country whence he came at any time within three years after the date of his entry into the United States," and section 21 says that if the Secretary of Commerce and Labor is satisfied that an alien has been found in the United States in violation of this act, or that an alien is subject to deportation under the provisions of this act or of any law of the United States, he shall cause such alien within the period of three years after landing or entry therein to be taken into custody, and "returned to the country whence he came." The law and rules provide for examination and inspection, and require all aliens to submit thereto as a condition of entry.

Failure to enter at a port of entry, submitting to examination and inspection, and entering surreptitiously, is an entry in violation of law, and an alien who so enters is "found in the United States in violation of this act," viz., the immigration laws, and is subject to deportation. There is no question that a citizen of Canada or Mexico who enters the United States by land and in violation of the immigration laws would be deported to Canada or Mexico. That would be the country whence he came beyond all question. However, many aliens come to the United States by sea from trans-Atlantic and trans-Pacific ports, and some come from their native country, that of their residence, partly by land and partly by sea, some coming to Canada or Mexico by sea, and thence into the United States. The law does not in all cases deport the alien, subject to deportation, to the country of which he was a citizen and a resident when he departed therefrom for the United States. It contains the general provisions found in sections 20 and 21, referred to, and then by section 35 provides for the deportation of aliens coming by sea from a trans-Atlantic or a trans-Pacific port either to the United States direct, or first by sea to foreign contiguous territory, contiguous to the United States, and thence to the United States, thereby fixing and defining what is to be regarded as the country whence they came. That section (section 35) provides as follows:

"Sec. 35. That the deportation of aliens arrested within the United States after entry and found to be illegally therein, provided for in this act, shall be to the trans-Atlantic or trans-Pacific ports from which said aliens embarked for the United States; or, if such embarkation was for foreign contiguous territory, to the foreign port at which said aliens embarked for such territory."

I have just considered and decided this question in Matter of Application of Wong You and four others for a writ of habeas corpus, and will not further repeat what is there said.

Congress has the power to regulate and control the admission and rejection and deportation of aliens. By section 35 it returns a certain class to the foreign port from which they embarked for the United States direct or from which they embarked for foreign contiguous territory, and thence came to the United States. The immigration laws are to be read and construed as a whole and effect given to all its provisions. Washington Market Co. v. Hoffman, 101 U. S. 112, 25 L. Ed. 782; Bernier v. Bernier, 147 U. S. 242, 13 Sup. Ct. 244, 37 L. Ed. 152; Pollard v. Bailey, 20 Wall. 520, 22 L. Ed. 376. That Chinese aliens who enter the United States in violation and defiance of our immigration laws and rules, and are therefore found unlawfully in the United States, are not subject to deportation under and in accordance with such immigration laws and by the instrumentalities therein provided, is, in my judgment, an untenable position. The immigration act provides that:

"This act shall not be construed to repeal, alter, or amend existing laws relating to the immigration or exclusion of Chinese persons or persons of Chinese descent."

This is not a declaration that the act and all or any of its provisions are inapplicable to Chinese aliens. If they enter, they must enter at the designated ports of entry. If they enter, they must submit to the examination and inspection provided for all aliens. A Chinese anarchist, or a Chinese afflicted with one of the loathsome or infectious diseases mentioned in the act, is no more entitled to admission than is an Italian or Japanese alien. If a Chinese alien sees fit to enter surreptitiously and in violation of law, he is then illegally in the United States, and Congress has confided to the Department of Commerce and Labor the power and duty of ascertaining the fact and, if shown, of deporting the offender. In Looe Shee v. North, 170 Fed. 572, 95 C. C. A. 646, and 24 Op. Atty. Gen. 706, this power, as to Chinese aliens, is upheld. This court considered the question in Ex parte Li Dick (D. C.) 174 Fed. 674, and on this point, after a full examination and further consideration, adheres to the proposition that a Chinese alien who surreptitiously enters the United States in violation of the immigration act may be deported under the provisions of that act, and that such an entry so gained does not entitle him to a hearing before a United States judge or commissioner. I do not think the law is in such shape that a Chinese alien who surreptitiously enters, and thereby violates and evades compliance with the immigration law, thereby also evades the Department of Com-

merce and Labor and its jurisdiction to deal with him under the provisions of that act and becomes entitled to a trial and examination before a justice, judge, or a commissioner, under the provisions of the Chinese exclusion laws. The two acts can stand and be enforced together. Two remedies may be provided for the same illegal act, and either, or, in some cases, both, enforced. If Congress had intended to exclude Chinese aliens from the operation of the immigration laws, it would have done so by apt words. It would have been easy to do so. We find no word or expression indicating such a purpose. Again, the Chinese exclusion laws are aimed principally at Chinese laborers, and certain Chinese are not affected by them. The regulations established provide (rule 3) that "Chinese aliens shall be examined as to their right to admission to the United States under the provisions of the law regulating immigration as well as under the laws relating to the exclusion of Chinese," etc., and their status under the immigration laws is first to be ascertained and determined, and then their status under the exclusion laws. Rule 25 provides for the temporary departure of a Chinese merchant domiciled in the United States, and tells what shall be done by him. Li Dick did not comply with this rule or make any pretence of complying. In fact, his statement is, in effect, that he intended to avoid compliance therewith as well as with the immigration laws. Rule 49 expressly provides that Chinese aliens arrested and tried for a violation of the Chinese exclusion laws are to be deported only on the order of a justice, judge, or commissioner. When, however, the arrest, etc., is for a violation of the immigration laws, such aliens are to be deported according to the provisions of that act. I think the Department of Commerce and Labor has been careful to preserve the distinction between violation of the immigration laws and violation of the Chinese exclusion laws as well as the procedure and mode of enforcement, including deportation, and that the distinctions were observed in this case. Li Dick did not come as a Chinese merchant seeking to enter, or as a domiciled Chinese merchant seeking to return, but, being a Chinese alien coming from China to the United States intending to remain and live here, he surreptitiously entered in the night, in violation and defiance of our immigration laws to which he was subject. Under those laws and rules and regulations established for their enforcement, he was properly dealt with. The writ is dismissed, and Li Dick remanded, to be dealt with according to law.