### UNG BAK FOON v. PRENTIS.

(Circuit Court of Appeals, Seventh Circuit. October 5, 1915.)

### No. 2177.

1. ALIENS ☞32—DEPORTATION PROCEEDINGS—JUDICIAL REVIEW.

In determining whether an alien is lawfully in the United States, the hearings before the administrative officers charged with the execution of the statute are conclusive when fairly conducted; and the conclusions and orders made upon such hearings are not subject to judicial review, unless it be shown that the proceedings were manifestly unfair, that the action of the officers was such as to prevent a fair investigation, or that there was a manifest abuse of the discretion committed to them by the statute.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ☞32.]

2. ALIENS ☞32—DEPORTATION PROCEEDINGS—HEARINGS.

A Chinese person, when arrested, was examined by an immigration inspector, and then stated that he was born in China and smuggled into the United States. On a further hearing, when he was represented by counsel, he repudiated these statements, and claimed to be of American birth, and his testimony to that effect was corroborated. *Held* that, his statements on the first hearing not having been made under duress, nor procured through any abuse of power on the part of the immigration inspector, it was not a denial of a fair hearing to base an order of deportation upon his admissions at such hearing, as such a preliminary investigation as was made is proper and necessary to the efficient administration of the statute.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ☞32.]

3. ALIENS ☞32—DEPORTATION—COUNTRY TO WHICH ALIEN SHOULD BE DEPORTED.

Immigration Act Feb. 20, 1907, c. 1134, 34 Stat. 904 (Comp. St. 1913, § 4269), provides in section 20 that any alien entering the United States in violation of law shall be deported to the country whence he came, and section 21 (section 4270) similarly provides regarding aliens found in the United States in violation of statute or subject to deportation. Section 35 (section 4284) provides that the deportation of aliens, arrested within the United States after entry and found to be illegally therein, shall be to the trans-Atlantic or trans-Pacific ports from which they embarked for the United States, or, if such embarkation was for foreign contiguous territory, to the foreign port at which such alien embarked for such territory. *Held*, that a Chinese person, embarking from Hong Kong for a point in Canada with the intent or design of entering the United States, was properly ordered deported to China, notwithstanding a stay of a few months in Canada.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ☞32.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. ALIENS &copy;&rarr;32—DEPORTATION—COUNTRY TO WHICH ALIEN SHOULD BE DE-
PORTED.
> A Chinese person embarked from Hong Kong for a point in Canada, and after a stay of a few months in Canada unlawfully entered the United States. It appeared that he had previously long resided in the United States, that he had come to this country from China on three different occasions, and that he had relatives and friends here with whom he had been engaged in business. *Held* that, presumptively, he intended to go to the United States, by the way of Canada, because that was what he actually did, and the circumstances, instead of tending against this presumption, supported it, and hence he was properly ordered deported to China, instead of Canada.

> [Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. &copy;&rarr;32.

> What Chinese persons are excluded from the United States, see note to Wong You v. United States, 104 C. C. A. 538.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; George A. Carpenter, Judge.

Habeas corpus proceeding by Ung Bak Foon against P. L. Prentis, Inspector. From a judgment discharging the writ, petitioner appeals. Affirmed.

Appellant, a Chinese person, by habeas corpus proceedings in the District Court sought to be released from the custody of the immigration authorities at Chicago, where he is held by virtue of a warrant of deportation issued by the Acting Secretary of Labor, dated April 2, 1914. The District Court discharged the writ, and the petitioner prosecuted this appeal.

On the day of his arrival in Chicago, January 9, 1914, appellant was taken into custody, and was examined under oath by an immigration inspector with a view to determining whether or not he was lawfully within the United States. The examination was conducted through an official Chinese interpreter, and in answer to questions put to him appellant stated, among other things, that he was born in China, in the village of Mon Low, Sun Woey district, and first came to the United States in the year 1893, when he was about 20 years of age; that at that time he arrived at Portland, Or., and gained admission to this country upon a fictitious Chinese merchant's return certificate, which was procured for him by his father in China; that with the exception of a visit to his home in 1898, he had lived in the United States continuously until 1909, and that he was associated with relatives and friends in the laundry and restaurant business in various cities; that in 1909 he left Chicago and returned to China, and in the following year, 1910, went to Mexico, where he remained but one month, returning to China, and in 1913 arrived at Victoria, Canada, from Hong Kong; that he worked a few months in Victoria and in Toronto, and then went on to Windsor, from where he was smuggled into the United States, coming to Chicago on a freight train by arrangement with one Lee Suey Sing at Windsor, to whom he paid $20 and promised to send $150 more if he arrived safely at his destination in Chicago.

On February 10, 1914, a further hearing was granted appellant, to show cause why he should not be deported. At this hearing he was represented by counsel, and several witnesses were produced. He then testified that he was born in San Francisco, Cal., and was taken to China by his parents when he was 10 years old. He disowned his earlier statements that he was born in China and that he was smuggled into the United States, claiming that he could not understand the questions put to him on his previous examination, although he spoke through the same interpreter on both occasions. As to the manner of his coming to this country from China at the age of 20 years, and as to his subsequent movements in the various cities of the United States, and in other respects, his testimony coincided with the statements he made on the

---

&copy;&rarr;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

day of his arrest. He denied, however, having returned to China in 1909, and testified that in 1910 he left Chicago, intending to go to New York, but that through some mistake in the purchase of a railroad ticket he boarded a train which carried him to Canada, from where he was unable to gain entrance to the United States and therefore remained in Canada until his recent coming to Chicago. He denied that he entered this country surreptitiously, and testified that, on representing himself to be an American citizen to a white person at Windsor, the latter for a consideration of $5 secured his transportation to Chicago; that the journey to Chicago was made on a "slow passenger train," he being the only passenger, and that he was not examined by an immigration officer at the time he entered the United States.

Ng You and Mun Hawk were called to corroborate appellant's testimony as to his American birth. Ng You testified that he had known appellant in San Francisco from the time he was 1 or 2 years old until he was of the age of 10 years when his parents took him to China; that he was told by appellant's parents that appellant was born in San Francisco. He further testified that he again saw appellant some 10 years later, in New York, and had also seen him in Chicago, some 4 or 5 years prior to the hearing. Mun Hawk testified that he lived in San Francisco from 1871 to 1884, on the second floor of the same building in which appellant was born, and was living there at the time of appellant's birth. On cross-examination, he testified that he only lived at this place when he was out of work, and that he was absent most of the time working on a farm; that he was never on the third floor, where appellant and his parents lived, but saw him frequently running about in his father's store on the first floor of the building, and that he was living there at the time appellant, at the age of 9 years, was taken to China by his father and mother; that from that time until appellant's coming to Chicago from Windsor he had seen him but once—in New York some 20 years before the date of the hearing. H. C. Dana and Joe On corroborated appellant's testimony to the effect that during the years 1909 and 1910 he was living in Chicago. On the day of his arrest he stated that he left Chicago in 1909.

With all this evidence before him, the Acting Secretary of Labor found that appellant entered the United States in violation of section 36 of the act of Congress of February 20, 1907 (34 Stat. 898, c. 1134 [Comp. St. 1913, § 4285]), in that he had entered without inspection, and accordingly issued a warrant for his deportation to China. On the hearing of the petition for a writ of habeas corpus and the return thereto, which embodied all the prior proceedings, the petition charging that petitioner was denied a fair hearing by the immigration officers, the District Court upon this record discharged the writ, as before stated, and remanded the petitioner to the custody of the immigration authorities.

The errors relied upon are: The court erred in discharging the writ, because (1) the evidence showed appellant to be a citizen of the United States; and (2) appellant could not in any event, under all the evidence, be deported to China, but only to Canada.

E. G. Godman, of Chicago, Ill., for appellant.

Charles F. Clyne and John E. Byrne, both of Chicago, Ill., for appellee.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). [1] It has been settled by numerous decisions of the Supreme Court, as well as the other federal courts, that for the purpose of determining whether an alien is lawfully in the United States, the hearings before the administrative officers charged with the execution of the act are conclusive when fairly conducted, and that the conclusions and orders made upon such hearings are not subject to judicial review, except it

be shown that the proceedings were manifestly unfair, that the action of the officers was such as to prevent a fair investigation, or that there was a manifest abuse of the discretion committed to them by the statute. Low Wah Suey v. Backus, 225 U. S. 460, 32 Sup. Ct. 734, 56 L. Ed. 1165, Prentis v. Di Giacomo, 192 Fed. 467, 112 C. C. A. 605, and cases cited.

[2] Appellant in his petition for a writ of habeas corpus averred that he was denied a fair hearing by the immigration authorities. This charge was based solely upon the alleged incompetency of certain evidence included in the record which formed the basis of the order of deportation issued by the Acting Secretary of Labor; and it is contended that had this evidence been excluded the record would show that appellant was born in the United States and therefore is an American citizen and not deportable. The alleged incompetent evidence consisted of the statement made by appellant at the time of his apprehension, wherein he swore, as above stated, that he was born in China and was smuggled into this country. These admissions were not made under duress nor procured through an abuse of power on the part of the immigration inspector. Preliminary investigation such as was here made is proper and necessary to the efficient administration of the statute, and, as said in United States v. Moy Toom (D. C.) 224 Fed. 520:

"It tends greatly to elucidate the truth to hear what the Chinese person has to say about such simple facts as his age, parentage, relationships, occupation, and localities where he has lived, and the circumstances attending his latest entry into this country, *before* his lawyer appears."

We held in Prentis v. Seu Leung, 203 Fed. 25, 121 C. C. A. 389, that such a proceeding constitutes a part of the hearing contemplated by the act. We are not concerned with the weight of the evidence. The Secretary of Labor no doubt regarded the testimony of the witnesses in corroboration of appellant's claim of American birth as not being of such a convincing character as to overcome appellant's original sworn statements and to furnish that degree of proof required to establish the citizenship of a person of Chinese descent; and we are unable to say that he was not justified in doing so.

[3, 4] It is next urged that the deportation warrant is illegal, because it directs that appellant be taken to China, whereas Canada is "the country whence he came." Sections 3, 20, 21 and 35 of the Act deal with the question of the place to which an alien found to be unlawfully in the United States, or to have forfeited his right to remain therein, shall be deported. Section 3 applies to aliens who have been convicted of certain criminal offenses. Section 20 provides:

"That any alien who shall enter the United States in violation of law,"

And section 21:

"That in case the Secretary of Commerce and Labor shall be satisfied that an alien has been found in the United States in violation of this act, or that an alien is subject to deportation under the provisions of this act," he shall be deported upon the warrant of the Secretary of Commerce and Labor to "the country whence he came."

And section 35 provides that:

"The deportation of aliens arrested within the United States after entry and found to be illegally therein, provided for in this act, shall be to the trans-Atlantic or trans-Pacific ports from which said aliens embarked for the United States; or, if such embarkation was for foreign contiguous territory, to the foreign port at which said aliens embarked for such territory."

Appellant embarked from Hong Kong, China, for Victoria, Canada, foreign territory contiguous to the United States, and was found to have entered this country in violation of the act. No proof was offered to show that his unlawful entry was not in pursuance of an intent or design to do so at the time he left Hong Kong. If he did have such intent, then manifestly China would still be the country whence he came to the United States, notwithstanding his temporary stay in Canada. If he merely crossed Canada on his way here from Hong Kong, he should be returned to that port. Lewis v. Frick, 233 U. S. 291, 303, 34 Sup. Ct. 488, 58 L. Ed. 967. Nor would the fact that several months intervened the time of his landing in Canada and his unlawful entry into the United States change the situation if he eventually carried out his purpose. Presumptively, he did intend to come to this country by way of Canada from China, because that is what he actually did. The evidence in the record in no way tends against this presumption, but supports it. His long residence in the United States, covering a period of more than 16 years, that he came here from China on three different occasions, that he had relatives in this country, as he testified, and friends, with whom he had been engaged in business, and his brief stay in Canada, are circumstances which lend support to the presumption that his objective point when he left China was the United States. All of his testimony evidences an intention on his part to leave Canada and come into this country as soon as opportunity offered.

In Ex parte Wong You (D. C.) 176 Fed. 933, it was found that the Chinese aliens whose cases were under consideration had embarked from Hong Kong, China, for the Dominion of Canada intending to surreptitiously enter the United States, which they did, and it was held that under such circumstances they were properly deported to Hong Kong, instead of Canada. This case was cited with approval by the Supreme Court in Lewis v. Frick, supra. To like effect are Ex parte Li Dick (C. C.) 176 Fed. 998, and Ex parte Hamaguchi (C. C.) 161 Fed. 185, also cited in the Lewis v. Frick Case, supra.

The judgment of the District Court is affirmed.