Ex parte NAOE MINAMIJI.

NAOE MINAMIJI v. CARR, District Director.

No. 6084.

Circuit Court of Appeals, Ninth Circuit.

Jan. 26, 1931.

J. Edward Keating and Theodore E. Bowen, both of Los Angeles, Cal., for appellant.

Samuel W. McNabb, U. S. Atty., and P. V. Davis, Asst. U. S. Atty., both of Los Angeles, Cal. (Harry B. Blee, U. S. Immigration Service, of Los Angeles, Cal., on the brief), for appellee.

Before RUDKIN and WILBUR, Circuit Judges, and NORCROSS, District Judge.

NORCROSS, District Judge.

This is an appeal from an order [36 F. (2d) 422], discharging a writ of habeas corpus and remanding appellant to the custody of the United States Immigration Service.

The question of law presented is whether appellant is entitled to enter the United States as the wife of a Japanese trade treaty alien, in pursuance of the provisions of section 3 (6), Immigration Act of 1924 (8 USCA § 203 (6).

Appellant and her husband, Fukujiro Minamiji, presented themselves for entry at the port of San Pedro, Cal., May 2, 1929. The husband was in possession of a return permit previously issued by the Immigration Service under the provisions of section

10(a) of the aforesaid act (8 USCA § 210 (a). Appellant was in possession of an immigration visa issued to her by the American consul at Yokohama, Japan, and certifying her to be the wife of a trade treaty alien. The husband was admitted as a returning legally domiciled alien. Appellant was denied admission.

■ 'If Fukujiro Minamiji was in fact entitled to be regarded as a trade treaty merchant, then appellant was entitled to admission as the wife of such merchant. Shizuko Kumanomido v. Nagle (C. C. A.) 40 F.(2d) 42. The primary question is the legal status of the husband.

Fukujiro Minamiji first entered the United States on September 13, 1915, and resided therein continuously until he left on a temporary visit to Japan in December, 1928. Upon this visit he was married to appellant. At the time of his first entry he was fifteen years old. He went to live with his father, who conducted a farm at Chula Vista, Cal. For about three years he worked on the farm, during which time he attended night school. From 1918 to 1922 he worked in a newspaper office in Los Angeles as a clerk. From 1922 to 1925 he attended the Central Junior High School in Los Angeles. During his summer vacations he followed the occupation of a fisherman. From May to November, 1926, he attended school at Detroit, Mich. In January, 1927, he purchased 20 shares of the capital stock of the Nippon Company, a domestic corporation conducting a mercantile business in the city of San Diego, paying therefor $1,500. He also purchased an additional 40 shares to be paid for on time. The books of the company showed 60 shares of the total of 400 shares of the company as standing in his name. The manager of the Nippon Company, a Japanese, testified that Minamiji went to work for the Nippon Company January 3, 1927, as a delivery boy and that "after three or four months' experience as a delivery boy he proved himself to be a good man and we appointed him outside sales manager." He received a salary of $100 a month, with a bonus, and in addition stock dividends amounting to "about $300 a year or more." During his absence on his trip to Japan he received no salary and his place was filled temporarily. The manager further testified: "I can't tell what position he will take (after his return). My idea is that I have to have him in my store. * * * I want to have him in the store, but I have to ask his own desires in the matter first." This witness also testified that the value of the 60 shares of stock in the name of Minamiji was about $5,000; that the Nippon Company owned its store building, valued at $55,000; that the business of the company was worth $200,000; that goods on hand were worth $17,000. The witness presented a financial statement showing the company had a surplus fund of about $47,500; cash in bank $6,018.85. Seventy per cent. of the business of the company was in imported Japanese goods, the remainder American-made goods. The witness further testified that there were four active members in the Nippon Company. In addition to himself as manager, they were the bookkeeper and two outside delivery and salesmen, of which salesmen it would appear that Minamiji prior to his departure had been designated "outside sales manager," and to which position he would return.

In a letter of the inspector in charge of the Immigration Service at San Diego, of date May 8, 1929, appears the following concerning the Nippon Company: "The Nippon Company is probably the largest and best known company of its kind and nationality in San Diego. The store is well known to officers of this service, and carries a large stock of goods; it will be seen from the testimony that the company has been in existence many years, and from the documentary evidence presented it is apparently in flourishing condition."

■ Upon a review of the evidence presented to the immigration officers the court below reached the conclusion that their finding is sustained by substantial evidence. Ex parte Naoe Minamiji (D. C.) 36 F.(2d) 422. The question presented may be said to be near the border line, but in our view, as a matter of law, the evidence submitted requires a different conclusion. It is true that Fukujiro Minamiji upon his entry into the United States as a boy of fifteen years began life as a farm laborer, but it also appears that he devoted himself assiduously to acquiring an education that would ultimately materially aid in qualifying him for the status he now claims. It certainly is not the law that he might not change his status from a mere domiciled alien to that of a merchant. Mere stock ownership in a domestic corporation legitimately to be classified as engaged in foreign commerce would not of itself be determinative of the status of the owner or ostensible owner; nor would any particular title that might be given to the employment in which he was engaged. These are circumstances, however, to be considered with other circumstances, as age, opportunity, ability,

industry, frugality, ambition, and the like, in determining whether in fact there has been a change in status. The evidence in this case establishes the fact that appellant's husband from the time he left school made rapid strides towards qualifying himself in the class he claims. We are of opinion the evidence impels the conclusion that he succeeded and was entitled to be classed as a trade treaty alien.

Order reversed.