### KUMAKI KOGA et ux. v. BERKSHIRE, District Director.

### No. 7514.

Circuit Court of Appeals, Ninth Circuit.
Feb. 25, 1935.

J. Edward Keating and Theodore E. Bowen, both of Los Angeles, Cal., for appellants.

Peirson M. Hall, U. S. Atty., and Jack L. Powell, Asst. U. S. Atty., both of Los Angeles, Cal., for appellee.

Before WILBUR and GARRECHT, Circuit Judges, and CAVANAH, District Judge.

GARRECHT, Circuit Judge.

The sole question involved herein is whether appellants failed to maintain the status under which they were admitted to the United States in 1929. The case comes to us upon appeal from an order of the District Court denying petition of appellants for writ of habeas corpus.

Kumaki Koga was admitted to the United States under the provisions of section 3, subd. 6, of the Immigration Act of 1924 (43 Stat. 154, 8 USCA § 203 (6), which reads as follows: "When used in this act [subchapter] the term 'immigrant' means any alien departing from any place outside the United States destined for the United States, except * * * (6) an alien entitled to enter the United States solely to carry on trade under and in pursuance of the provision of a present existing treaty of commerce and navigation." Kumaki Koga was a newspaper correspondent, and, it being agreed that the treaty was sufficiently broad to include newspaper correspondents and reporters under the head of traders, he and his wife were admitted to the United States. Appellee concedes that at the time of entry of the appellants a newspaper correspondent was admissible as a "treaty trader" and does not question the exempt status of appellants at the time of their entry.

When arrested on September 27, 1932, at a nursery operated by the wife's brother, appellants were dressed in working clothes. Upon questioning, at that time, the testimony given tended to show that appellant Kumaki Koga had either abandoned his status as a newspaper correspondent, or that he had never had such status. Appellant Kumaki Koga testified that he was corresponding with his newspaper in Japan five or six times a month and that he received 3,000 yen per year for the articles he wrote. He then failed to answer the question: "How do you receive this money from Japan?" He said that sometimes he didn't carry on the type of work he was supposed to do when he came into the United States. Upon being asked when he last sent correspondence to his newspaper in Japan, he answered: "I cannot say anything. I will go back to Japan." His further testimony indicated that he had been employed at the nursery since he came to the United States; that he did not receive wages but borrowed money, as he needed it, from his brother-in-law, month by month; that he signed no notes therefor; that he received no money from the Japanese newspaper but had sent about 30 articles, the last of which was sent in December, 1931. He then failed to answer the question "How does it happen that they [the Japanese newspaper] never sent you any money?" and nodded his head "yes" to, "The fact is that you have never sent any reports to your paper in Japan, isn't it?"

Later, at the hearing to show cause, the aliens substantially changed their stories, claiming to have misunderstood some questions and to have been misunderstood in answering others. They introduced a certificate signed by one "Jiro Kawano, Manager of all Newspaper Representatives, Nyushu Nippo," to the effect that Kumaki Koga was sent by the newspaper to the United States as special correspondent; that his services were satisfactory; that he was and would continue to hold the title of special correspondent. It further recited that his salary would "be paid to him as soon as the request is received *from* us at the rate of three thousand yen per year."

Inasmuch as appellee concedes that at the time of entry of appellants a newspa-

per correspondent was admissible as a "treaty trader," we will proceed upon that assumption, without further discussion. Cf. Shizuko Kumanomido v. Nagle, 40 F.(2d) 42 (C. C. A. 9). One who has entered lawfully may remain unlawfully [Ng Fung Ho v. White, 259 U. S. 276, 281, 42 S. Ct. 492, 66 L. Ed. 938; Nakazo Matsuda v. Burnett, 68 F.(2d) 272, 275 (C. C. A. 9)], for unlawful remaining of an alien in the United States is an offense distinct in its nature from unlawful entry into the United States.

◼ Of course, one admitted as a "treaty trader" would have to maintain such status. Should he fail to do so, he would be subject to deportation, as where one admitted as a merchant becomes a laborer. United States ex rel. To Ming v. Com'r of Immigration et al., 52 F.(2d) 791 (D. C. N. Y.). See, also, Ex parte Wong Gar Wah (Wong Gar Wah v. Carr, etc.), 18 F.(2d) 250 (C. C. A. 9); United States ex rel. Lam Shin Hing v. Corsi, etc., 4 F. Supp. 591 (D. C. N. Y.).

◼ There was conflict in the testimony between that given at the time of arrest and that given at the hearing. The Board believed the former testimony and made its findings accordingly. This court said in Chin Share Nging v. Nagle, etc., 27 F.(2d) 848, 849: "* * * The conclusions of administrative officers upon issues of fact are invulnerable in the courts, unless it can be said that they could not reasonably have been reached by a fair-minded man, and hence are arbitrary." Where the issue rests upon conflicting testimony, the court is not at liberty to review an administrative finding, unless in some other particular the conduct of the officers was such as to render the hearing unfair. Ex parte Wong Nung (Wong Nung v. Carr, etc.), 30 F.(2d) 766 (C. C. A. 9).

"For, where there is jurisdiction, a finding of fact by the executive department is conclusive, * * * and courts have no power to interfere, unless there was either denial of a fair hearing, * * * or the finding was not supported by evidence, * * * or there was an application of an erroneous rule of law. * * *" Ng Fung Ho, etc., v. White, 259 U. S. 276, 284, 42 S. Ct. 492, 495, 66 L. Ed. 938. The Board was entitled to look to both examinations in its search for the truth. Ung Bak Foon v. Prentis, 227 F. 406, 409 (C. C. A. 7); Prentis v. Seu Leung, 203 F. 25, 28 (C. C. A. 7). There can be no conclusion but that appellants were given a fair hearing.

◼ The status of the wife is dependent upon that of the husband. Ex parte Naoe Minamiji (Naoe Minamiji v. Carr, etc.), 46 F.(2d) 627 (C. C. A. 9).

Affirmed.