**UNITED STATES ex rel. RAK v. HUGHES,**

**District Director of Immigration and Naturalization.**

**No. 6688.**

Circuit Court of Appeals, Third Circuit.

April 14, 1939.

Albert P. Morwitz and Abraham Greenberg, both of Camden, N. J., for appellant.

Thorn Lord, of Trenton, N. J., for appellee.

John J. Quinn, U. S. Atty., of Trenton, N. J., for the United States.

Before THOMPSON and BIGGS, Circuit Judges, and MARIS, District Judge.

BIGGS, Circuit Judge.

Frank (Francesco) Rak, an alien, was arrested upon a warrant issued by the Assistant to the Secretary of Labor, signed July 13, 1935, charging him with entry into the United States subsequent to the sixth day of March, 1927, in violation of Section 13 of the Immigration Act of 1924, Act of May 26, 1924, c. 190, Sec. 13, 43 Stat. 161, 8 U.S.C.A. § 213, in that at the time of his entry he was not in possession of an unexpired immigration visa.

Later an additional charge was placed against Rak by the Department of Labor, namely, that he had remained in the United States for a longer period than was permitted by the Immigration Act of 1924. Extensive hearings were had before an Inspector of Immigration and much testimony was presented. The Immigrant Inspector found that the charge that Rak was not in possession of an unexpired immigration visa at the time of his entry was not sustained, but did find that the charge subsequently added, viz., that Rak had remained in the United States for a longer time than permitted by law was sustained. The Board of Review reversed the finding of the Inspector and held that Rak should be deported because he was not in possession of an unexpired immigration visa at the time of entry. The Secretary of Labor thereupon ordered his deportation. Rak filed a petition for habeas corpus in the District Court of New Jersey, but the writ was discharged by order of the court below and Rak was remanded to the custody of the Secretary of Labor for deportation. The appeal at bar was taken from this order.

■ It should be pointed out that if the alien entered the United States as he claims in 1922, the provisions of the Immigration Act of 1917, Section 19, 8 U.S.C.A. § 155, would be applicable and therefore if the alien had remained in the United States for a period of five years, viz., from August 1922 to August 1927, he would not be subject to deportation. Upon the other hand if he entered the United States, as the Government contends, after the 1924 Immigration Act became effective, the effective date of that Act being July 1, 1924, he would be subject to deportation.

It appears from the record that the alien was born upon December 31, 1898, in Trieste, then a part of Austria, now a part of Italy. He testified that he entered the United States in August, 1922, illegally as a deserting seaman from the SS. Argentino at the Port of New York and that he has remained in this country ever since. The Government contends that the alien first entered the United States in 1924 and that he was at Turriaco, a suburb of Trieste, upon June 3, 1927, and that therefore he re-entered the United States after that date. No evidence was produced from the records of any port as to Rak's entry into the United States at any date.

Rak offered testimony tending to show his presence in the United States from August 1922 on and the nature of his employment in this country. Some of this testimony was credible; some was not. For example, the alien testified that his first employment was in the construction of the Broad Street Subway in Philadelphia in 1922 and the record discloses the fact that ground was broken for the construction of the Broad Street Subway in 1924. In our opinion it is unlikely that an alien would forget the nature of his first employment in a new country. Within the critical period of the summer of 1927, viz., June, July and August, however, the testimony offered by Rak as to his employment in Philadelphia is credible. J. T. Johansen, a partner in an enterprise known as the Atlantic Engineering Company, testified that to the best of his knowledge Rak was employed by the Atlantic Engineering Company in the spring of 1927 and that this employment continued through the summer of 1927. While Johansen's testimony seems to us to be entitled to much weight, it will appear upon examination that it is not such as would preclude the possibility of Rak having made a trip to Trieste in June 1927 and having returned to the United States immediately thereafter.

■ The case against Rak therefore turns upon certain items of testimony to which we have not yet adverted. First, Rak himself offered in evidence a certificate from the Mayor of Turriaco to the effect that he had emigrated from Turriaco in May 1924. Assuming this to be the actual date of Rak's emigration to the United States, none the less it cannot be presumed that he did not reach the United States before July 1st, 1924, the date upon which the Immigration Act of 1924 be-

came effective. Section 31(c) of the Act of 1924, 43 Stat. 169, provides, "If any alien arrives in the United States before July 1, 1924, his right to admission shall be determined without regard to the provisions of this Act * * *". We are therefore of the opinion that the right of the Department of Labor to deport Rak must turn upon the proof afforded by a card of identity found upon his person at the time of his arrest, and the statements of the Mayor of Turriaco that this card was issued to Rak in person upon June 3, 1927, and Rak departed from Italy upon June 18, 1927.

We should state that if the card was issued to Rak in person in June, 1927, it is apparent that the alien thereafter made an entry into the United States and may therefore be deported in accordance with the provisions of the Immigration Act of 1924.

The card of identity referred to is not unusual in form. It contains certain personal data in respect to Rak and his picture is pasted upon that portion of the card designed for such purpose. Stamped across the picture and upon the card are three inked seals of the municipality of Turriaco. Since a portion of the seals lie upon the picture itself it is entirely apparent that the seals were stamped upon the card after the photograph was placed upon it. The signature of the Mayor is undecipherable and a fourth seal has been stamped across this signature. The card is signed "Rak" and this signature is admitted by the alien to be his own. To the left of the signature of the Mayor is a space for the print of the index finger of the left hand of the person to whom the card of identity is to be issued. This space is blank, and this is some evidence that the card was not issued to Rak in person. An examination of Rak's signature shows clearly that it was written after the second seal was struck upon the card, since the formation of portions of the letter R in the name Rak are diffused by meeting the blue ink of the seal. This affords some corroboration of Rak's statement that the card was signed by him after it was issued, he contending that the card was procured for him by his wife in Turriaco and was sent to him in this country by her. It is also apparent upon examination that the signature of the Mayor was written with a different ink than that with which Rak wrote his name. Upon examination Rak testified that he could not remember where the picture was taken. In view of the time which has elapsed between the issuance of the card and the commencement of the present proceedings, viz., eight years, this statement is not incredible. The United States Consul at Trieste reported by letter to the Secretary of State that he was advised by the Mayor of Turriaco "* * * under date of August 7, 1936, that Rak was present in Turriaco on June 3, 1927, when he took delivery of his identity card, and that he left Italy on June 18, 1927." It does not appear from the record whether or not the Mayor of Turriaco who made this statement to the Consul was the same person who served as Mayor of Turriaco when the card was issued, nor is there any explanation as to how the Mayor of Turriaco in 1936 is able to state that he knows that the card was issued to Rak in person in 1927. Nor does it appear how the Mayor knew that Rak left Italy, as distinguished from Turriaco, on June 18, 1927.

None the less, was the foregoing all of the evidence we should not feel justified in reversing the order of the court below. The card of identity itself, however, shows certain alterations and changes. It is clear that the number upon the front of the card has been changed from 213 to 215, by rubbing out the numeral 3 and striking in above it the numeral 5. Moreover, it is apparent from an examination of the card itself that a name other than "Rak" was at one time typed in the space upon the card opposite the printed word "Cognome", this being the space designed for the surname of the person to whom the card is to be issued. It is also apparent that another name than "Francesco" was once typed in the space upon the card opposite the word "Nome", this being the space designed for the Christian name of the holder of the card of identity. The words which were inserted opposite the printed words "Cognome" and "Nome" and were rubbed out cannot now be deciphered by us, but it is apparent that the obliterated letters spelled neither "Rak" nor "Francesco". The card therefore has been subjected to some alterations which, unexplained, tend to lessen its weight as an authentic document and serve to cast doubt upon the certainty with which the

Mayor of Turriaco can speak in respect to this card.

█ It is fundamental that in deportation proceedings the action taken by the Secretary of Labor is discretionary and findings made by her will not be disturbed unless they are arbitrary, capricious or without substantial support in the evidence. Ex parte Singh, D.C., 12 F.Supp. 145; Kumaki Koga v. Berkshire, 9 Cir., 75 F.2d 820. It is also well established that in such proceedings strict rules of evidence do not apply. Ex parte Singh, supra; Ex parte Shigenari Mayemura, 9 Cir., 53 F.2d 621; Kunimori Ohara v. Berkshire, 9 Cir., 76 F.2d 204. But bare statements made by the Mayor of Turriaco that Rak was in Turriaco and received the card of identity in person in June, 1927, and that he left Italy shortly thereafter, with no explanation of the means whereby the Mayor is able to recall these incidents occurring nine years before, considered in conjunction with the unexplained alterations in the card of identity, are insufficient to furnish an adequate basis for the order of the Secretary of Labor for Rak's deportation.

There is nothing in the record which tends to give answers to the following pertinent questions. Was the Mayor of Turriaco who made the statement in 1936 that Rak received the card of identity in person the same individual who caused the card to be issued in 1927? How did the Mayor of Turriaco know in 1936 that the card of identity was issued to Rak in person in 1927? Why was the card of identity issued without the finger print of Rak, if Rak was present at the time of its issuance? Why has the card of identity itself been subjected to some alteration? What were the words or names which were written upon the card and which have now been obliterated? How does the Mayor of Turriaco know that Rak left Turriaco or Italy upon June 18, 1927? Opportunity should be afforded to the parties to adduce evidence in respect to these matters.

Accordingly in view of all of the foregoing the order of the court below discharging the writ of habeas corpus is reversed and it is ordered that the writ be reinstated. The cause is remanded with directions to the court below to proceed in conformity with this opinion.