**KANAME SUSUKI et al. v. HARRIS.**

No. 47.

District Court, E. D. Texas, Beaumont Division.

Aug. 1, 1939.

T. S. Taliaferro, of Taliaferro & Graves, of Houston, Tex., for relators.

Steve M. King, U. S. Atty., and Fred Hull, Asst. U. S. Atty., both of Beaumont, Tex., for respondent.

ALLRED, District Judge.

This habeas corpus proceeding by relators, citizens of Japan, calls for review of an order of deportation made by the Secretary of Labor.

The warrant of deportation recites that relators are subject to deportation under Sec. 19 of the Immigration Act of Feb. 5, 1917, 8 U.S.C.A. § 155, "being subject thereto under * * * the Act of 1924, [8 U.S.C.A. §§ 145, 146, 166, 167, 179, 201–228, 229] in that he (she) has remained in the United States after failing to maintain the exempt status under which he (she) was admitted, of an alien entitled to enter the United States *solely to carry on trade under and in pursuance of the provisions of the present existing treaty of commerce and navigation.*" (Italics supplied.)

Relator Tei Susuki is the wife of Kaname Susuki. Her status, therefore, is dependent upon that of her husband.

Relator Kaname Susuki first entered the United States May 20, 1925, through the Port of Seattle, Washington, as a nonimmigrant "treaty trader" under Sec. 3(6) of the Immigration Act of 1924, Title 8, Sec. 203(6), U.S.C.A. At that time he was an employee of the Kawasaki Dockyards Company, Ltd., of Kobe, Japan, a Japanese corporation, and gave as his destination the company's office in New York City, where he was to act as a shipping clerk for the "K" Line Steamship Company, a subsidiary company owned by the Kawasaki Dockyards Co., Ltd. Then and now the "K" Steamship Co. lines visit the ports of Houston and Beaumont, Texas, and the port of New Orleans, La., all adjacent to the port of Orange. They do not visit, and have not visited, the port of Orange.

Upon being admitted, relator did not go to New York City but acting, he says, upon instructions of his employer proceeded to Orange, Texas, where he was to

48

act as shipping clerk for the "K" Line Steamship Company; and where he also acted as secretary to a Mr. Takashima, president of the Orange Petroleum Corporation, who returned to Japan in 1929. The Kawasaki Dockyards Co., Ltd., owned in 1925, and still owns, 45% of the stock of the Orange Petroleum Corporation, a Delaware corporation engaged in the production and sale of petroleum in Orange County, Texas. The oil is immediately sold and delivered at the wells to another domestic corporation.

The operations of the Orange Petroleum Corporation have not been successful. About the year 1925 the Petroleum Corporation borrowed large sums of money from the Kawasaki Dockyards Co., Ltd.; and in 1926 created an indenture under which the Corporation issued $1,600,000 of its bonds, secured by a mortgage. The bonds were purchased by Kawasaki Dockyards Co., Ltd., in the year 1926, all of the principal and some of the interest on such indebtedness still being due. From that time on, the *net proceeds from the sale* of oil by the Orange Petroleum Corporation have been applied upon the indebtedness due the Kawasaki Dockyards Co., Ltd.

At the time relator came to Orange, Texas, in 1925, he had no connection with the *management* of the Orange Petroleum Corporation. He did, however, assist in keeping that company's books and acted as Secretary to the president of such company. Although his testimony is vague in some respects, the record shows that he attended to some duties as shipping clerk for the "K" Steamship Co. lines and later became assistant manager of such lines. At the same time he performed the duties of an apprentice for the Orange Petroleum Corporation, trying to learn the oil business.

In *August, 1929, relator returned to* Japan for the purpose of marrying Tei Susuki, and also to report to the Dockyards Co., Ltd., as to the "K" Steamship Co. lines as well as the Orange Petroleum Corporation's operations. He remained in Japan about two months and then, with his wife, returned to the United States through the port of San Francisco upon passports based upon practically the same information as upon his original entry, giving his destination as the offices of the steamship company in New York City. He was then admitted as a "treaty trader" under the act of 1924, his position being that of assistant manager of the "K" Steamship lines. At that time he did not disclose that he had been living in Orange, Texas, or anything about his connection with the Orange Petroleum Corporation. Immediately upon this entry, relator again proceeded to Orange, Texas, where he entered upon practically the same duties both for the "K" Steamship lines and the Orange Petroleum Corporation as before.

About two times each year relator Kaname Susuki made business trips to New York City to confer with officials of both the Steamship Co. lines and the Orange Petroleum Corporation. In 1928, at the request of the Kawasaki Dockyards Co., Ltd. (in order to protect its interest and investment as shareholder and creditor), Kaname Susuki was elected assistant secretary of the Orange Petroleum Corporation; and in 1929, upon the same request and for the same purpose, he was elected treasurer and assistant secretary of the oil corporation and put in active charge of its business. The company is in process of liquidation and its operations are being conducted for the purpose of liquidating the indebtedness of the petroleum corporation to the dockyards company. It was and is necessary and desirable, in order to protect the interests and investment of the dockyards company, for them to have relator Kaname Susuki in Orange, Texas, to supervise the operations of the petroleum corporation.

In connection with his duties as assistant secretary, relator keeps the books and does the accounting work of the petroleum corporation. In 1932, in order to economize, a bookkeeper, who had been doing this character of work for ten years prior, was discharged and relator took over his duties. He is the only office employee in the offices at Orange, Texas. He has devoted the greater part of his time to his duties with the Orange Petroleum Corporation, but testifies that each day he performs some duty for the Kawasaki Dockyards Co., Ltd., such as writing letters, cables, etc.; this in addition to his occasional visits to the offices of the steamship company in New York and to visit sea captains in the several ports adjacent to Orange, Texas. Relator has at no time worked as a laborer in this country.

He has not received any salary direct from the dockyards company, but has always been paid by the Orange Petroleum Corporation. For the past several years

he has received a salary of $250 per month from the Petroleum Corporation. This indebtedness is not directly charged to the dockyards company by the petroleum corporation, only the net proceeds from the income of the petroleum corporation being paid to the dockyards company.

In 1931 both relators went to Canada on a pleasure trip and spent five hours at Niagara Falls, returning through this port on the same date at which time they were admitted upon their passports as "treaty traders."

Again, in 1936, relator Kaname Susuki went to Canada on a pleasure trip with the chief auditor of the Kawasaki Dockyards Co. Ltd., to see Niagara Falls. They remained on the Canadian side about three hours, returning on the same date through the port at Niagara Falls upon the passport theretofore issued to relator, Kaname Susuki, as a "treaty trader."

The first question involved herein is whether relators failed to maintain the status under which they were admitted to the United States. Relator takes the position that there was *no* evidence to support the findings of fact made by the immigration authorities; and that the Secretary of Labor placed an erroneous construction of law on the undisputed facts.

■ Of course, "on habeas corpus the court must accept the findings of fact of the immigration authorities, in the absence of deprivation of fair trial. * * * The credibility of witnesses and weight of the testimony is for them, and is not reviewable on habeas corpus. * * * If there is evidence to sustain the charge, the decision of the Secretary of Labor as to the weight of the proof must be accepted by the courts as conclusive. * * *" Lindsey v. Dobra, 5 Cir., 62 F.2d 116, 118, and authorities therein cited.

■ "For where there is jurisdiction, a finding of *fact* by the executive department is conclusive * * * and courts have no power to interfere, unless there was either denial of a fair hearing * * * *or the finding was not supported by evidence * * * or there was an application of an erroneous rule of law * * *."* (Italics supplied.) Ng Fung Ho, etc. v. White, 259 U.S. 276, 284, 42 S.Ct. 492, 495, 66 L.Ed. 938; Kumaki Koga v. Berkshire, 9 Cir., 75 F.2d 820.

■ The facts stated in this memorandum are taken entirely from the record made before the Immigration authorities and are not disputed. The question is, do they show as a matter of law that relators failed to maintain the exempt status under which they were admitted, "of an alien entitled to enter the United States solely to carry on trade under and in pursuance of the provisions of the present existing treaty of commerce and navigation." This involves a determination of whether the activities of relator Kaname Susuki constituted "trade" under the act of 1924 as well as the treaty between the United States Government and Japan, 37 Stat. 1504. In my opinion, under the authorities relators have not failed to maintain their status as "treaty traders" and are not subject to deportation. Shizuko Kumanomido v. Nagle, 9 Cir., 40 F.2d 42, 43, and authorities therein cited; Ex Parte Haruye Suzuki, D.C., 36 F.2d 424; Ex Parte Naoe Minamiji, 9 Cir., 46 F.2d 627;[1] In re Katsujiro Akiyama et ux., D.C., 58 F.2d 363.

Authorities cited by respondent (Kumaki Koga v. Berkshire, 9 Cir., 75 F.2d 820; United States ex rel. Coco v. Hughes, D.C., 9 F.Supp. 792; Sugaya v. Haff, 9 Cir., 78 F.2d 989) are all distinguishable. In all these cases the *facts* show an abandonment of the exempt status by the aliens becoming *laborers*.

Respondent contends, however, that Kaname Susuki, having entered the United States January 25, 1936, through the port of Niagara Falls, New York (after his pleasure trip with the chief auditor of the

---

[1] Pertinent provisions of the treaty with Japan are set out in Asakura v. Seattle, 265 U.S. 332, at page 340, 44 S.Ct. 515, at page 516, 68 L.Ed. 1041: "The citizens or subjects of each of the high contracting parties shall have liberty to enter, travel and reside in the territories of the other to carry on trade, wholesale and retail, to own or lease and occupy houses, manufactories, warehouses and shops, to employ agents of their choice, to lease land for residential and commercial purposes, and generally to do anything incident to or necessary for trade upon the same terms as native citizens or subjects, submitting themselves to the laws and regulations there established. * * * The citizens or subjects of each * * * shall receive, in the territories of the other, the most constant protection and security of their persons and property. * * *"

dockyards company), is subject to deportation under the amended act of 1932.

Relators take the position that the pleasure trip to Niagara Falls, occupying only about three hours time, the return to the United States being on the same day, does not constitute a new entry, citing Annello ex rel. Annello v. Ward, D.C., 8 F.Supp. 797. This case is in conflict with the weight of authority. Zurbrick v. Woodhead, 6 Cir., 90 F.2d 991, and authorities therein cited; United States ex rel. Siegel v. Reimer, D.C., 23 F.Supp. 643; United States ex rel. Dombrowski v. Karnuth, D.C., 19 F.Supp. 222; United States ex rel. Drachmos v. Hughes, D.C., 26 F.Supp. 192.

Title 8, Sec. 203, U.S.C.A. (Act of May 26, 1924, c. 190, § 3, 43 Stat. 154) reads as follows: "An alien entitled to enter the United States solely to carry on trade under and in pursuance of the provision of a present existing treaty of commerce and navigation. (May 26, 1924, c. 190, § 3, 43 Stat. 154.)"

This was amended in 1932, after the decisions relied upon by relators, to read as follows: "An alien entitled to enter the United States solely to carry on trade *between the United States and the foreign state of which he is a national* under and in pursuance of the provisions of a treaty of commerce and navigation, and his wife, and his unmarried children under twenty-one years of age, if accompanying or following to join him. (As amended July 6, 1932, c. 434, 47 Stat. 607.)" 8 U.S.C.A. § 203(6). (Italics supplied.)

The distinction between the original and the amended act is shown by the portion italicized above, by adding· after "trade" the words "between the United States and the foreign state of which he is a national."

No decisions have been cited construing this amended statute. Counsel for respondent contend that it means, as applied to the facts in this case, that the Orange Petroleum Corporation must be engaged in commerce or trade *with Japan,* or that the Kawasaki Dockyards Co., Ltd., must be engaged solely in trade or commerce *with Japan.* I do not think so. In my opinion, the amendment of 1932 does not in any way affect the decisions in Shizuko Kumanonido v. Nagle, Ex Parte Haruye Susuki, Ex Parte Naoe Minamiji, and In re Katsujiro Akijama et ux., supra. However, even if the amendment of 1932 does limit the effect of such decisions, it would not be applicable to relators for the reason that the warrant of deportation is not based upon the *amended act of 1932,* ("trade between the United States and the foreign state of which he is a national"), but rather upon the *original act of 1924* ("trade under and in pursuance of the provision of a present existing treaty of commerce and navigation").

The writ will, therefore, be sustained and the aliens discharged. If the respondent desires to appeal, the discharge of the aliens shall be continued upon the recognizance previously entered into by petitioners, with sufficient sureties in the sum of $1,000 each for their appearance to answer the judgment of the appellate court.

Let an order be prepared in accordance with this memorandum.